# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| State of ALABAMA DEPARTMENT OF HUMAN RESOURCES, CHILD SUPPORT ENFORCEMENT DIVISION 50 Ripley St Montgomery, AL 36130-4000 <br><br> State of DELAWARE DEPARTMENT OF HEALTH & SOCIAL SERVICES DIVISION OF CHILD SUPPORT ENFORCEMENT 84A Christiana Rd New Castle, DE 19720 <br><br> District of COLUMBIA OFFICE OF THE CORPORATION COUNSEL, CHILD SUPPORT SERVICES DIVISION 441 4th Street, NW, Suite 1060N Washington, DC 20001 <br><br> State of HAWAII, DEPARTMENT OF THE ATTORNEY GENERAL, CHILD SUPPORT ENFORCEMENT AGENCY 601 Kamokila Blvd., Room 207 Kapolei, HI 96707 <br><br> State of INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION 402 West Washington Street Room W451, MS27 Indianapolis, IN 46204-2744 <br><br> State of KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES Docking State Office Building, Room 530 915 SW Harrison Street Topeka, KS 66612 <br><br> State of LOUISIANA DEPARTMENT OF SOCIAL SERVICES | AMENDED COMPLAINT <br><br> Civ. No. 01: 05CV2098 (RJL) |

DC: 2016154-3

| | |
|---|---|
| A. Z. Young Building<br>755 3rd Street<br>Baton Rouge, LA 70802<br><br>State of NEW MEXICO HUMAN SERVICES<br>DEPARTMENT<br>2009 South Pacheco Street<br>Santa Fe, NM 87505<br><br>and<br><br>State of RHODE ISLAND DEPARTMENT OF<br>ADMINISTRATION,<br>CHILD SUPPORT ENFORCEMENT<br>77 Dorrance Street<br>Providence, RI 02903<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>and<br><br>MICHAEL O. LEAVITT, Secretary of the United<br>States Department of Health and Human Services<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **AMENDED COMPLAINT**

### PRELIMINARY STATEMENT

1. This is a complaint for declaratory relief brought by the agencies responsible for administering the Child Support Enforcement programs in the States of Alabama, Delaware, Hawaii, Indiana, Kansas, Louisiana, New Mexico, and Rhode Island, and in the District of

Columbia (collectively, "the States" or "the Plaintiffs").  The Child Support Enforcement program is governed by Title IV-D of the Act.  42 U.S.C. § 651 et seq.

2. In November 2003, the States were informed that defendant Administration for Children and Families ("ACF"), an agency within defendant United States Department of Health and Human Services ("HHS"), was immediately assessing a penalty equal to 1% of each jurisdiction's Temporary Assistance for Needy Families ("TANF") block grant in federal fiscal year ("FFY") 2004.  The TANF program is governed by Title IV-A of the Social Security Act ("the Act").  42 U.S.C. §§ 601 et seq.  The penalties relate to the States' purported failure to meet certain performance and data reliability standards in their Child Support Enforcement programs.

3. The States appealed the penalties to HHS's Departmental Appeals Board ("DAB").  In decisions dated July 28, 2005, and October 26, 2005, the DAB upheld the full penalties against all of the States.  DAB No. 1989 (attached as Exhibit A); DAB No. 2001 (attached as Exhibit B).[1]

4. HHS violated the Social Security Act and its own regulations in assessing penalties against the Plaintiffs resulting in reductions to the States' TANF grants.  Before assessing the penalties, ACF failed to provide Plaintiffs with the required notice of penalty and one-year opportunity to implement corrective action that is called for by penalty provisions in the Social Security Act and by ACF's own regulations.  In addition, ACF improperly used different protocols in assessing data reliability depending on which method a State chose for measuring its

---

[1] Decision No. 1989 upheld the penalties assessed against the plaintiff agencies in Alabama, Delaware, District of Columbia, Hawaii, Kansas, Louisiana, New Mexico, and Rhode Island.  Decision No. 2001 upheld the penalty assessed against Plaintiff Indiana Family and Social Services Administration.

paternity establishment percentage ("PEP") data, without notifying the States, through a notice-and-comment rulemaking or any other type of announcement, of the use of different methodologies.

5. Because of HHS's illegal and improper actions in assessing and upholding the IV-D penalties, Plaintiffs seek a declaration from this Court that Defendants' imposition of the penalties was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law, and an injunction ordering HHS to restore to States the full penalty amount.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361, which provide for original jurisdiction in suits involving questions arising under federal law and suits to compel action by federal agencies.

7. The States' request for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. There presently exists an actual controversy between the parties.

8. Judicial review in this Court is authorized by 42 U.S.C. § 610(c)(1), which provides for the review in this Court of final decisions of the DAB related to adverse action by HHS under Title IV-A of the Social Security Act. This appeal is filed within 90 days of the date of the DAB's decisions.[2]

---

[2] The original complaint in this action, asserting claims related to DAB No. 1989, was submitted within 90 days of the date of that decision. The amended complaint, adding claims related to DAB No. 2001, was submitted within 90 days of the date of that decision.

9. Judicial review is also authorized by the Administrative Procedure Act, 5 U.S.C. §§ 501 *et seq.*, which provides for the review of "final agency actions." The July 28, 2005 and October 26, 2005 DAB decisions upholding the penalties constitute "final agency action[s]" within the meaning of 5 U.S.C. § 704.

10. Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) and (2), inasmuch as Defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

11. Plaintiff State of Alabama Department of Human Resources, Child Support Enforcement Division, is a state agency responsible for administering Alabama's Child Support Enforcement Programs.

12. Plaintiff State of Delaware Department of Health & Social Services, Division of Child Support Enforcement, is a state agency responsible for administering Delaware's Child Support Enforcement Programs.

13. Plaintiff District of Columbia Office of the Corporation Counsel, Child Support Services Division, is a district agency responsible for administering the District's Child Support Enforcement Program.

14. Plaintiff State of Hawaii Department of the Attorney General, Child Support Enforcement Agency, is a state agency responsible for administering Hawaii's Child Support Enforcement program.

15. Plaintiff Indiana Family and Social Services Administration is a state agency responsible for administering Indiana's Child Support Enforcement program.

16. Plaintiff State of Kansas Department of Social and Rehabilitation Services is a state agency responsible for administering Kansas' Child Support Enforcement program.

17. Plaintiff State of Louisiana Department of Social Services is a state agency responsible for administering Louisiana's Child Support Enforcement program.

18. Plaintiff State of New Mexico Human Services Department is a state agency responsible for administering New Mexico's Child Support Enforcement program.

19. Plaintiff State of Rhode Island Department of Administration, Child Support Enforcement, is a state agency responsible for administering Rhode Island's Child Support Enforcement program.

20. Defendant HHS is a federal agency that administers a number of joint federal/state programs. ACF is the cognizant agency responsible for overseeing the Child Support Enforcement programs at the federal level.

21. Defendant Michael Leavitt is the Secretary of HHS. In that capacity he is responsible for the overall administration of HHS. Secretary Leavitt is sued in his official capacity.

## FACTUAL BACKGROUND

A. <u>Statutory and Regulatory Overview of the IV-D Penalty Scheme</u>

22. The Child Support Enforcement Program was created in 1975 by Title IV-D of the Social Security Act. Title IV-D authorized each State to create its own child support program to provide four major services: locating non-custodial parents, establishing paternity, establishing child support obligations, and collecting child support for parents. In each State, child support services are available free to families receiving cash assistance through TANF and are available for a fee to families not receiving cash assistance.

23.     The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 amended Title IV-D to set certain performance measures for States to meet in establishing paternity.  In order to be found in substantial compliance with Title IV-D requirements, a State's child support enforcement program must meet a "paternity establishment percentage" (also known as a "PEP") of 90% or, if less than 90%, must show an increase in its PEP from the immediately preceding fiscal year.

24.     A State can choose between two calculations to determine its PEP.  The first is the "IV-D paternity establishment percentage," which is the percentage of children in the IV-D program who are born out of wedlock and for whom paternity is established.  The second is the "statewide paternity establishment percentage," which is the total number of children born out of wedlock statewide for whom paternity has been established.  42 U.S.C. § 654(g)(2)(A), (B).  No matter what PEP methodology the State chooses, a State's PEP must be based on "reliable data," 42 U.S.C. § 654(g)(1), defined as "the most recent data available which are found by the Secretary to be reliable for purposes of this section." 42 U.S.C. § 654(g)(2)(C).  The statute also gives the Secretary the authority to establish additional performance measures that States are required to meet.

25.     The Welfare Reform Technical Amendments Act of 1997, Pub. L. 105-33, 111 Stat. 251 (1997), amended Section 409 of Title IV-A, 42 U.S.C. § 609 to put in place penalties for States' noncompliance with the requirements of Title IV-D.  That section provides that if the Secretary finds:

> (l) on the basis of data submitted by a State pursuant to section 454(15)(B), or on the basis of the results of a review conducted under section 452(a)(4), that the State program failed to achieve the paternity establishment percentages (as defined in section 452(g)(2)), or to meet other performance measures that may be established by the Secretary;

>    (II) on the basis of the results of an audit or audits conducted under section 452(a)(4)(C)(i) that the State data submitted pursuant to section 454(15)(B) is incomplete or unreliable; or
>
>    (III) on the basis of the results of an audit or audits conducted under section 452(a)(4)(C) that a State failed to substantially comply with 1 or more of the requirements of part D . . .

and that, "with respect to the succeeding fiscal year"--

>    (I) the State failed to take sufficient corrective action to achieve the appropriate performance levels or compliance as described in subparagraph (A)(i); or
>
>    (II) the data submitted by the State pursuant to section 454(15)(B) is incomplete or unreliable,

then the State's TANF grant shall be reduced by a specified percentage "for quarters following the end of such succeeding fiscal year" and continuing until "the State program has achieved the paternity establishment percentages or other performance measures[.]" The amount of the TANF grant reduction is 1-2% in the first year; 2-3% percent for a second consecutive finding; and 3-5% percent for the third consecutive finding. 42 U.S.C. § 609(a)(8)(B).

   26.   The statute also directs the Secretary to disregard any noncompliance which is of a "technical nature." 42 U.S.C. § 609(a)(8)(C). Specifically, the Act provides that the Secretary may determine either that a State's noncompliance "does not adversely affect the performance of the State's program under part D" or that data found to be incomplete or reliable can still be considered adequate if "the extent of the incompleteness or unreliability is of a technical nature which does not adversely affect the determination of the level of the State's paternity establishment percentages . . . or other performance measures[.]" *Id.*

   27.   ACF's Office of Child Support Enforcement ("OCSE") issued rules implementing the IV-D penalty provisions on December 27, 2000. 65 Fed. Reg. 82,178. The regulations provide that that if a State is found by the Secretary to be subject to a penalty, "the ACF will notify the State in writing of such finding." 45 C.F.R. § 305.66(a). Specifically, the

regulations require that the potential penalty notice must "(1) [e]xplain the deficiency or deficiencies which result in the State being subject to a penalty, indicate the amount of the potential penalty, and give reasons for the finding" and "(2) [s]pecify that the penalty will be assessed . . . if the State is found to have failed to correct the deficiency or deficiencies cited in the notice during the automatic corrective action year." 45 C.F.R. § 305.66(b). The regulations elsewhere state that "[t]here will be an automatic one-year corrective action before any penalty is assessed" and that "[t]he penalties will be assessed and then suspended during the corrective action period." 45 C.F.R. § 305.42.

28. At the end of each fiscal year, OCSE requires each State to submit form OCSE-157, which consists of over forty lines for the entry of data relating to state child support enforcement efforts. The data from eight of these entries ("the performance indicators") are used to calculate performance levels for the three measures that can be the subject of a penalty.

29. The OCSE Office of Audit then performs data reliability audits ("DRAs") to ensure the completeness and reliability of the eight performance indicators used to compute the performance level percentages. According to an audit guide dated March 2002, the auditors select a random sample of files from a State's child support case file system and examine them to determine whether the information in the files matches the data reported on the OCSE-157. Then, through the use of statistical formulas, the auditors project an efficiency rating and confidence limit for each performance indicator. If the results of the DRA establish, with a 95% confidence level, that a performance indicator's efficiency rating is below 95%, then the indicator is deemed unreliable, and the State is thus subject to a penalty. *See* 45 C.F.R. § 305.1(i) (setting a 95% standard of reliability effective in FFY 2001).

30. In the data reliability audits, ACF auditors use two different methodologies for evaluating the reliability of IV-D PEP and statewide PEP data. To evaluate IV-D PEP data, the auditors use the same sample selected from the child support universe as they use to evaluate the reliability of other performance measures, and they assess errors for data that are improperly included in the sample ("inclusion errors") and data that are improperly excluded from the sample ("exclusion errors"). To evaluate statewide PEP data, the auditors draw an entirely different random sample from a combination of sources, and they only count inclusion errors in evaluating the reliability of this data.

31. The differences in the two auditing methodologies were not explained to the States at the time that they selected how to calculate their PEP statistics. The only indication of the distinction appears in a footnote to the ACF's *Guide for Auditing Data Reliability*, which was made available to the States after the fact.

32. The two different methodologies resulted in a much higher failure rate in demonstrating reliable data among States that chose the IV-D PEP measure than among States that chose the statewide PEP measure.

B. The FFY 2001 Data Reliability Audit Reports, Penalties, and Appeal

33. Although data reliability audits were first conducted in fiscal year 2000, the first year for which States were subject to performance penalties was federal fiscal year 2001. *See* 45 C.F.R. § 305.42 ("Penalty phase-in"). By letter dated December 19, 2001, ACF confirmed to each State that the first year for assessing penalties would be based on FFY 2001 data. The December 19, 2001, letter did not make any state-specific findings or pronouncements on whether a State would be subject to penalties for its FFY 2001 data. ACF sent this letter to the IV-D agency in each State, not to the IV-A agency.

34. Subsequent to the December 19, 2001, letter, the OCSE Office of Audit completed data reliability audits of each State's child support enforcement data for FFY 2001. The Office of Audit issued draft and final audit reports to each State, summarizing the results of its audits. These audit reports expressly disavow that they are making any determinations as to penalties. Instead, the reports specifically state that the Office of Audit merely conducts audits; it does not make any final determinations regarding data reliability. The reports ask States to "[p]lease understand that while the Office of Audit does make a finding of unreliable data, the actual determination and notification is made by the Commissioner, ACF." Again, the Office of Audit sent both the draft and final audit reports to the IV-D agencies in each state, not to the IV-A agencies.

35. On November 14, 2003, ACF sent letters to the IV-A agencies in thirteen States (including the Plaintiffs), informing them for the first time that ACF was immediately assessing a 1% penalty on their FFY 2004 TANF grants, because of their failures to meet performance and/or data reliability standards in their child support enforcement programs in FFY 2001 and 2002.

36. The amount of the penalties imposed on each State that is a Plaintiff in this action, as well as the total fiscal impact of each penalty, are as follows:

- Alabama: $532,692 penalty, with a total fiscal impact of $1,065,384.

- Delaware: $293,489 penalty, with a total fiscal impact of $586,978.

- District of Columbia: $701,495 penalty, with a total fiscal impact of $1,402,990.

- Hawaii: $921,048 penalty, with a total fiscal impact of $1,842,096.

- Indiana: $1,447,594 penalty, with a total fiscal impact of $2,895,198.

- Kansas: $807,487 penalty, with a total fiscal impact of $1,614,974.

- Louisiana: $1,096,723 penalty, with a total fiscal impact of $2,193,446.

- New Mexico: $946,877 penalty, with a total fiscal impact of $1,893,754.

- Rhode Island: $945,007 penalty, with a total fiscal impact of $1,890, 014.

37. The total fiscal impact of a penalty is double the penalty amount, because States both lose federal funds and are required by statute to replace the lost federal funds with state funds. *See* 42 U.S.C. § 609(a)(12).

38. Plaintiffs Alabama, Delaware, District of Columbia, Hawaii, Kansas, Louisiana, New Mexico, and Rhode Island jointly appealed these penalties to the Departmental Appeals Board. Attach. A.[3] Plaintiff Indiana filed a separate appeal before the Departmental Appeals Board. Attach. B. The States argued that ACF failed to satisfy the notice requirement contained in 45 C.F.R. § 305.66(b), which requires that ACF must give Plaintiffs notice of a potential penalty that "[s]pecif[ies] that the penalty will be assessed…if the State is found to have failed to correct the deficiency or deficiencies cited in the notice in the automatic corrective action year." The November 2003 letter assessing the penalty was the first notice the States received that their TANF grants were subject to penalty.

39. Six of the States[4] also challenged the penalties on the grounds that ACF's use of differing methodologies to assess IV-D PEP and statewide PEP data reliability was arbitrary, capricious and without basis in the statute or regulations. Moreover, because the differing methodologies created a wide discrepancy in failure rates between States that chose the

---

[3] The New Hampshire Department of Health and Human Services also participated in the joint appeal. Four other States and territories -- including Plaintiff Indiana -- individually appealed similar penalties, also announced in letters from ACF dated November 14, 2003.

[4] These States were Alabama, Delaware, Hawaii, Louisiana, New Mexico, and Rhode Island.

IV-D PEP measure and States that chose the statewide PEP measure, States were, at a minimum, entitled to an explanation of the differing methodologies, so they could make an informed decision about which PEP measure to use.

40. The States also raised a number of state-specific challenges to the penalties.

C. The Departmental Appeals Board Decisions

41. In its decisions on appeal, the DAB rejected all of the States' joint and state-specific challenges and upheld the penalties in their entireties.

42. With respect to the States' notice arguments, the DAB found that the regulation's notice requirements do not apply until *after* the "completion of two consecutive years of noncompliance with the regulations, after which a penalty must be assessed." Attach. A at 13-14; Attach. B at 11 ("[T]he notice requirements of section 305.66 do not apply, until the completion of two consecutive years of noncompliance."). This holding is contrary to the plain language of 45 C.F.R. § 305.66, which requires a notice "specifying that the penalty *will be* assessed . . . if the State is found to have failed to correct the deficiency" (emphasis added), as well as the purpose of the notice, which is to give the State the opportunity to implement corrective action to avoid the penalty.

43. The Board also concluded that the States had received adequate notice through the draft and final audit reports or were actually aware of their substandard performance during the year. Attach. A at 17-20; Attach. B at 16. However, none of these satisfy the explicit requirements of 45 C.F.R. § 305.66 that a penalty notice must notify the State of a potential penalty; explain the deficiencies; indicate the amount of the penalty and the reasons for it; and specify that the penalty will be assessed if the State does not correct the notice during the

corrective action year. The regulations provide no exception to the notice requirement where a State had "actual knowledge" of its performance.

44. The DAB also rejected Plaintiffs' arguments on ACF's use of differing methodologies to evaluate the reliability of the PEP data on the ground that there was a reasonable rationale for the different approaches. In reaching this conclusion, the Board failed to recognize that ACF's use of differing methodologies was a substantive rule that should have been subjected to notice-and-comment rulemaking or, at a minimum, should have been communicated to the States prior to their selection of how to present their PEP statistics.

45. For these reasons, the DAB's decisions were arbitrary and capricious, an abuse of discretion, and contrary to law, and should be overturned.

## COUNT I

(Failure to Meet Notice Requirements Before Imposing Penalties was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with the Law)

46. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

47. Defendants' action in imposing penalties against the States without meeting the notice requirements contained in both the statute and the regulations was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). Defendants' action, and the DAB decisions upholding it, should be reversed.

## COUNT II

(Use of Different Methodologies to Assess the Reliability of Statewide and IV-D PEP Data was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with the Law)

48. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 46 as if fully set forth herein.

- 14 -

49. Defendants' actions in using two different methodologies to determine the reliability of PEP data and then assessing penalties based on the results of those methodologies, without giving States the proper notice of the different methodologies or explaining why it used two different methodologies, was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). Defendants' actions, and the DAB decisions upholding them, should be reversed.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court will:

A. Order a speedy hearing of this matter and advance it on the calendar;

B. Enter judgment declaring that HHS DAB Decisions No. 1989 and 2001, and the underlying ACF penalties assessed against Plaintiffs that they upheld, were arbitrary and capricious, an abuse of discretion, and contrary to the requirements of federal law, and are unlawful, null, void, and of no legal effect;

C. Issue a permanent injunction requiring Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them, to pay each Plaintiff State the amount of the penalty withheld from the State's FY 2004 TANF grant and the amount in State funds spent by the State in FY 2005 to make up the amount withheld from the grant.

D. Award Plaintiffs the cost of the appeals to the DAB and of this action, including attorneys fees;

E. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment; and

F. Award Plaintiffs such other relief as may be just and proper.

Respectfully submitted,

_____
Caroline M. Brown (D.C. Bar No. 438432)
Joseph Zambuto, Jr. (D.C. Bar No. 484542)
Kelly C. Blevins (D.C. Bar No. 488287)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

*Attorneys for Plaintiffs*

DATED: January 20, 2006.

- 16 -