# EXHIBIT A

| Tab Number | Description |
|---|---|
| 1 | Social Security Act § 409 (42 U.S.C. § 609) |
| 2 | Social Security Act § 410 (42 U.S.C. § 610) |
| 3 | Social Security Act § 452 (42 U.S.C. § 652) |
| 4 | Social Security Act § 454 (42 U.S.C. § 654) |
| 5 | Social Security Act § 458 (42 U.S.C. § 658a) |

# Tab 1

# Compilation of the Social Security Laws

Social Security Online
www.socialsecurity.gov

Home     Questions?     How to Contact Us     Search

Compilation Home

 **PENALTIES**

---

Title Contents Previous Section Next Section

SEC. 409. *[42 U.S.C. 609]* (a) IN GENERAL.--Subject to this section:

(1) USE OF GRANT IN VIOLATION OF THIS PART.--

(A) GENERAL PENALTY.--If an audit conducted under chapter 75 of title 31, United States Code, finds that an amount paid to a State under section 403 for a fiscal year has been used in violation of this part, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year quarter by the amount so used.

(B) ENHANCED PENALTY FOR INTENTIONAL VIOLATIONS.--If the State does not prove to the satisfaction of the Secretary that the State did not intend to use the amount in violation of this part, the Secretary shall further reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year quarter by an amount equal to 5 percent of the State family assistance grant.

(C) PENALTY FOR MISUSE OF COMPETITIVE WELFARE-TO-WORK FUNDS.--If the Secretary of Labor finds that an amount paid to an entity under section 403(a)(5)(B) has been used in violation of subparagraph (B) or (C) of section 403(a)(5), the entity shall remit to the Secretary of Labor an amount equal to the amount so used.

(2) FAILURE TO SUBMIT REQUIRED REPORT.--

(A) IN GENERAL.--If the Secretary determines that a State has not, within 45 days after the end of a fiscal quarter, submitted the report required by section 411(a) for the quarter, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year by an amount equal to 4 percent of the State family assistance grant.

(B) RESCISSION OF PENALTY.--The Secretary shall rescind a penalty imposed on a State under subparagraph (A) with respect to a report if the State submits the report before the end of the fiscal quarter that immediately succeeds the fiscal quarter for which the report was required.

(3) FAILURE TO SATISFY MINIMUM PARTICIPATION RATES.--

(A) IN GENERAL.--If the Secretary determines that a State to which a grant is made under section 403 for a fiscal year has failed to comply with section 407(a) for the fiscal year, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately

*ADDEN #1*

succeeding fiscal year by an amount equal to the applicable percentage of the State family assistance grant.

(B) APPLICABLE PERCENTAGE DEFINED.--As used in subparagraph (A), the term "applicable percentage" means, with respect to a State--

(i) if a penalty was not imposed on the State under subparagraph (A) for the immediately preceding fiscal year, 5 percent; or

(ii) if a penalty was imposed on the State under subparagraph (A) for the immediately preceding fiscal year, the lesser of--

(I) the percentage by which the grant payable to the State under section 403(a)(1) was reduced for such preceding fiscal year, increased by 2 percentage points; or

(II) 21 percent.

(C) PENALTY BASED ON SEVERITY OF FAILURE.--The Secretary shall impose reductions under subparagraph (A) with respect to a fiscal year based on the degree of noncompliance, and may reduce the penalty if the noncompliance is due to circumstances that caused the State to become a needy State (as defined in section 403(b)(6)) during the fiscal year or if the noncompliance is due to extraordinary circumstances such as a natural disaster or regional recession. The Secretary shall provide a written report to Congress to justify any waiver or penalty reduction due to such extraordinary circumstances.

(4) FAILURE TO PARTICIPATE IN THE INCOME AND ELIGIBILITY VERIFICATION SYSTEM.--If the Secretary determines that a State program funded under this part is not participating during a fiscal year in the income and eligibility verification system required by section 1137, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year by an amount equal to not more than 2 percent of the State family assistance grant.

(5) FAILURE TO COMPLY WITH PATERNITY ESTABLISHMENT AND CHILD SUPPORT ENFORCEMENT REQUIREMENTS UNDER PART D.--Notwithstanding any other provision of this Act, if the Secretary determines that the State agency that administers a program funded under this part does not enforce the penalties requested by the agency administering part D against recipients of assistance under the State program who fail to cooperate in establishing paternity or in establishing, modifying, or enforcing a child support order in accordance with such part and who do not qualify for any good cause or other exception established by the State under section 454(29), the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year (without regard to this section) by not more than 5 percent.

(6) FAILURE TO TIMELY REPAY A FEDERAL LOAN FUND FOR STATE WELFARE PROGRAMS.--If the Secretary determines that a State has failed to repay any amount borrowed from the Federal Loan Fund for State Welfare Programs established under section 406 within the period of maturity applicable to the loan, plus any interest owed on the loan, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year quarter (without regard to this section) by the outstanding loan amount, plus the interest owed on the outstanding amount. The Secretary shall not forgive any outstanding loan amount or interest

0000491

owed on the outstanding amount.

(7) FAILURE OF ANY STATE TO MAINTAIN CERTAIN LEVEL OF HISTORIC EFFORT.--

(A) IN GENERAL.--The Secretary shall reduce the grant payable to the State under section 403(a)(1) for fiscal year 1998, 1999, 2000, 2001, 2002, or 2003 by the amount (if any) by which qualified State expenditures for the then immediately preceding fiscal year are less that the applicable percentage of historic State expenditures with respect to such preceding fiscal year.

(B) DEFINITIONS.--As used in this paragraph:

(i) QUALIFIED STATE EXPENDITURES.--

(I) IN GENERAL.--The term "qualified State expenditures" means, with respect to a State and a fiscal year, the total expenditures by the State during the fiscal year, under all State programs, for any of the following with respect to eligible families:

(aa) Cash assistance, including any amount collected by the State as support pursuant to a plan approved under part D, on behalf of a family receiving assistance under the State program funded under this part, that is distributed to the family under section 457 (a)(1)(B) and disregarded in determining the eligibility of the family for, and the amount of, such assistance.

(bb) Child care assistance.

(cc) Educational activities designed to increase self-sufficiency, job training, and work, excluding any expenditure for public education in the State except expenditures which involve the provision of services or assistance to a member of an eligible family which is not generally available to persons who are not members of an eligible family.

(dd) Administrative costs in connection with the matters described in items (aa), (bb), (cc), and (ee), but only to the extent that such costs do not exceed 15 percent of the total amount of qualified State expenditures for the fiscal year.

(ee) Any other use of funds allowable under section 404(a)(1).

(II) EXCLUSION OF TRANSFERS FROM OTHER STATE AND LOCAL PROGRAMS.--Such term does not include expenditures under any State or local program during a fiscal year, except to the extent that--

(aa) the expenditures exceed the amount expended under the State or local program in the fiscal year most recently ending before the date of the enactment of this section[47];or

(bb) the State is entitled to a payment under former section 403 (as in effect immediately before such date of enactment) with respect to the expenditures.

(III) EXCLUSION OF AMOUNTS EXPENDED TO REPLACE

0000492

PENALTY GRANT REDUCTIONS.--Such term does not include any amount expended in order to comply with paragraph (12).

(IV) ELIGIBLE FAMILIES.--As used in subclause (I), the term "eligible families" means families eligible for assistance under the State program funded under this part, families that would be eligible for such assistance but for the application of section 408(a)(7) of this Act, and families of aliens lawfully present in the United States that would be eligible for such assistance but for the application of title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996.

(ii) APPLICABLE PERCENTAGE.--The term "applicable percentage" means for fiscal years 1997 through 2002, 80 percent (or, if the State meets the requirements of section 407(a) for the fiscal year, 75 percent).

(iii) HISTORIC STATE EXPENDITURES.--The term "historic State expenditures" means, with respect to a State, the lesser of--

(I) the expenditures by the State under parts A and F (as in effect during fiscal year 1994) for fiscal year 1994; or

(II) the amount which bears the same ratio to the amount described in subclause (I) as--

(aa) the State family assistance grant, plus the total amount required to by paid to the State under former section 403 for fiscal year 1994 with respect to amounts expended by the State for child care under subsection (g) or (i) of section 402 (as in effect during fiscal year 1994); bears to

(bb) the total amount required to be paid to the State under former section 403 (as in effect during fiscal year 1994) for fiscal year 1994.

Such term does not include any expenditures under the State plan approved under part A (as so in effect) on behalf of individuals covered by a tribal family assistance plan approved under section 412, as determined by the Secretary.

(iv) EXPENDITURES BY THE STATE.--The term "expenditures by the State" does not include--

(I) any expenditure from amounts made available by the Federal Government;

(II) any State funds expended for the medicaid program under title XIX;

(III) any State funds which are used to match Federal funds provided under section 403(a)(5); or

(IV) any State funds which are expended as a condition of receiving Federal funds other than under this part.

Notwithstanding subclause (IV) of the preceding sentence, such term includes expenditures by a State for child care in a fiscal year to the extent that the total amount of the expenditures does not exceed the amount of State expenditures in fiscal year 1994

or 1995 (whichever is the greater) that equal the non-Federal share for the programs described in section 418(a)(1)(A).

(v) SOURCE OF DATA.--In determining expenditures by a State for fiscal years 1994 and 1995, the Secretary shall use information which was reported by the State on ACF Form 231 or (in the case of expenditures under part F) ACF Form 331, available as of the dates specified in clauses (ii) and (iii) of section 403(a)(1)(D).

(8) NONCOMPLIANCE OF STATE CHILD SUPPORT ENFORCEMENT PROGRAM WITH REQUIREMENTS OF PART D.--

(A) IN GENERAL.--If the Secretary finds, with respect to a State's program under part D, in a fiscal year beginning on or after October 1, 1997--

(i)(I) on the basis of data submitted by a State pursuant to section 454(15)(B), or on the basis of the results of a review conducted under section 452(a)(4), that the State program failed to achieve the paternity establishment percentages (as defined in section 452(g)(2)), or to meet other performance measures that may be established by the Secretary;

(II) on the basis of the results of an audit or audits conducted under section 452(a)(4)(C)(i) that the State data submitted pursuant to section 454(15)(B) is incomplete or unreliable; or

(III) on the basis of the results of an audit or audits conducted under section 452(a)(4)(C) that a State failed to substantially comply with 1 or more of the requirements of part D (other than paragraph (24) or subparagraph (A) or (B)(i) of paragraph (27), of section 454 and

(ii) that, with respect to the succeeding fiscal year--

(I) the State failed to take sufficient corrective action to achieve the appropriate performance levels or compliance as described in subparagraph (A)(i); or

(II) the data submitted by the State pursuant to section 454(15)(B) is incomplete or unreliable; the amounts otherwise payable to the State under this part for quarters following the end of such succeeding fiscal year, prior to quarters following the end of the first quarter throughout which the State program has achieved the paternity establishment percentages or other performance measures as described in subparagraph (A)(i)(I), or is in substantial compliance with 1 or more of the requirements of part D as described in subparagraph (A)(i)(III), as appropriate, shall be reduced by the percentage specified in subparagraph (B).

(B) AMOUNT OF REDUCTIONS.--The reductions required under subparagraph (A) shall be--

(i) not less than 1 nor more than 2 percent;

(ii) not less than 2 nor more than 3 percent, if the finding is the 2nd consecutive finding made pursuant to subparagraph (A); or

(iii) not less than 3 nor more than 5 percent, if the finding is the 3rd or a subsequent consecutive such finding.

0000494

(C) DISREGARD OF NONCOMPLIANCE WHICH IS OF A TECHNICAL NATURE.-- For purposes of this section and section 452(a)(4), a State determined as a result of an audit--

(i) to have failed to have substantially complied with 1 or more of the requirements of part D shall be determined to have achieved substantial compliance only if the Secretary determines that the extent of the noncompliance is of a technical nature which does not adversely affect the performance of the State's program under part D; or

(ii) to have submitted incomplete or unreliable data pursuant to section 454(15)(B) shall be determined to have submitted adequate data only if the Secretary determines that the extent of the incompleteness or unreliability of the data is of a technical nature which does not adversely affect the determination of the level of the State's paternity establishment percentages (as defined under section 452(g)(2)) or other performance measures that may be established by the Secretary.

(9) FAILURE TO COMPLY WITH 5-YEAR LIMIT ON ASSISTANCE.--If the Secretary determines that a State has not complied with section 408(a)(7) during a fiscal year, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year by an amount equal to 5 percent of the State family assistance grant.

(10) FAILURE OF STATE RECEIVING AMOUNTS FROM CONTINGENCY FUND TO MAINTAIN 100 PERCENT OF HISTORIC EFFORT.--If, at the end of any fiscal year during which amounts from the Contingency Fund for State Welfare Programs have been paid to a State, the Secretary finds that the qualified State expenditures (as defined in paragraph (7)(B)(i) (other than the expenditures described in subclause (I)(bb) of that paragraph)) under the State program funded under this part for the fiscal year are less than 100 percent of historic State expenditures (as defined in paragraph (7)(B)(iii) of this subsection), excluding any amount expended by the State for child care under subsection (g) or (i) of section 402 (as in effect during fiscal year 1994) for fiscal year 1994, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year by the total of the amounts so paid to the State that the State has not remitted under section 403(b)(6).

(11) FAILURE TO MAINTAIN ASSISTANCE TO ADULT SINGLE CUSTODIAL PARENT WHO CANNOT OBTAIN CHILD CARE FOR CHILD UNDER AGE 6.--

(A) IN GENERAL.--If the Secretary determines that a State to which a grant is made under section 403 for a fiscal year has violated section 407(e)(2) during the fiscal year, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year by an amount equal to not more than 5 percent of the State family assistance grant.

(B) PENALTY BASED ON SEVERITY OF FAILURE.--The Secretary shall impose reductions under subparagraph (A) with respect to a fiscal year based on the degree of noncompliance.

(12) REQUIREMENT TO EXPEND ADDITIONAL STATE FUNDS TO REPLACE GRANT REDUCTIONS; PENALTY FOR FAILURE TO DO SO.--If the grant payable to a State

under section 403(a)(1) for a fiscal year is reduced by reason of this subsection, the State shall, during the immediately succeeding fiscal year, expend under the State program funded under this part an amount equal to the total amount of such reductions. If the State fails during such succeeding fiscal year to make the expenditure required by the preceding sentence from its own funds, the Secretary may reduce the grant payable to the State under section 403(a)(1) for the fiscal year that follows such succeeding fiscal year by an amount equal to the sum of--

(A) not more than 2 percent of the State family assistance grant; and

(B) the amount of the expenditure required by the preceding sentence.

(13) PENALTY FOR FAILURE OF STATE TO MAINTAIN HISTORIC EFFORT DURING YEAR IN WHICH WELFARE-TO-WORK GRANT IS RECEIVED.--If a grant is made to a State under section 403(a)(5)(A) for a fiscal year and paragraph (7) of this subsection requires the grant payable to the State under section 403(a)(1) to be reduced for the immediately succeeding fiscal year, then the Secretary shall reduce the grant payable to the State under section 403(a)(1) for such succeeding fiscal year by the amount of the grant made to the State under section 403(a)(5)(A) for the fiscal year.

(14) PENALTY FOR FAILURE TO REDUCE ASSISTANCE FOR RECIPIENTS REFUSING WITHOUT GOOD CAUSE TO WORK.--

(A) IN GENERAL.--If the Secretary determines that a State to which a grant is made under section 403 in a fiscal year has violated section 407(e) during the fiscal year, the Secretary shall reduce the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year by an amount equal to not less than 1 percent and not more than 5 percent of the State family assistance grant.

(B) PENALTY BASED ON SEVERITY OF FAILURE.--The Secretary shall impose reductions under subparagraph (A) with respect to a fiscal year based on the degree of noncompliance.

(b) REASONABLE CAUSE EXCEPTION.--

(1) IN GENERAL.--The Secretary may not impose a penalty on a State under subsection (a) with respect to a requirement if the Secretary determines that the State has reasonable cause for failing to comply with the requirement.

(2) EXCEPTION.--Paragraph (1) of this subsection shall not apply to any penalty under paragraph (6), (7), (8), (10), (12), or (13) of subsection (a).

(c) CORRECTIVE COMPLIANCE PLAN.--

(1) IN GENERAL.--

(A) NOTIFICATION OF VIOLATION.--Before imposing a penalty against a State under subsection (a) with respect to a violation of this part, the Secretary shall notify the State of the violation and allow the State the opportunity to enter into a corrective compliance plan in accordance with this subsection which outlines how the State will correct or discontinue, as appropriate the violation and how the State will insure continuing compliance with this part.

(B) 60-DAY PERIOD TO PROPOSE A CORRECTIVE COMPLIANCE PLAN.--

0000496

During the 60-day period that begins on the date the State receives a notice provided under subparagraph (A) with respect to a violation, the State may submit to the Federal Government a corrective compliance plan to correct or discontinue, as appropriate the violation.

(C) CONSULTATION ABOUT MODIFICATIONS.--During the 60-day period that begins with the date the Secretary receives a corrective compliance plan submitted by a State in accordance with subparagraph (B), the Secretary may consult with the State on modifications to the plan.

(D) ACCEPTANCE OF PLAN.--A corrective compliance plan submitted by a State in accordance with subparagraph (B) is deemed to be accepted by the Secretary if the Secretary does not accept or reject the plan during 60-day period that begins on the date the plan is submitted.

(2) EFFECT OF CORRECTING OR DISCONTINUING VIOLATION .--The Secretary may not impose any penalty under subsection (a) with respect to any violation covered by a State corrective compliance plan accepted by the Secretary if the State corrects or discontinues, as appropriate the violation pursuant to the plan.

(3) EFFECT OF FAILING TO CORRECT OR DISCONTINUE VIOLATION .--The Secretary shall assess some or all of a penalty imposed on a State under subsection (a) with respect to a violation if the State does not, in a timely manner, correct or discontinue, as appropriate, the violation pursuant to a State corrective compliance plan accepted by the Secretary.

(4) INAPPLICABILITY TO CERTAIN PENALTIES.--This subsection shall not apply to the imposition of a penalty against a State under paragraph (6), (7), (8), (10), (12), or (13) of subsection (a).

(d) LIMITATION ON AMOUNT OF PENALTIES.--

(1) IN GENERAL.--In imposing the penalties described in subsection (a), the Secretary shall not reduce any quarterly payment to a State by more than 25 percent.

(2) CARRYFORWARD OF UNRECOVERED PENALTIES.--To the extent that paragraph (1) of this subsection prevents the Secretary from recovering during a fiscal year the full amount of penalties imposed on a State under subsection (a) of this section for a prior fiscal year, the Secretary shall apply any remaining amount of such penalties to the grant payable to the State under section 403(a)(1) for the immediately succeeding fiscal year.

[47] July 1, 1997.

Top of Document

# Tab 2

# Compilation of the Social Security Laws

 **APPEAL OF ADVERSE DECISION**

---

Title Contents Previous Section Next Section

SEC. 410. *[42 U.S.C. 610]* (a) IN GENERAL.--Within 5 days after the date the Secretary takes any adverse action under this part with respect to a State, the Secretary shall notify the chief executive officer of the State of the adverse action, including any action with respect to the State plan submitted under section 402 or the imposition of a penalty under section 409.

(b) ADMINISTRATIVE REVIEW.--

(1) IN GENERAL.--Within 60 days after the date a State receives notice under subsection (a) of an adverse action, the State may appeal the action, in whole or in part, to the Departmental Appeals Board established in the Department of Health and Human Services (in this section referred to as the "Board") by filing an appeal with the Board.

(2) PROCEDURAL RULES.--The Board shall consider an appeal filed by a State under paragraph (1) on the basis of such documentation as the State may submit and as the Board may require to support the final decision of the Board. In deciding whether to uphold an adverse action or any portion of such an action, the Board shall conduct a thorough review of the issues and take into account all relevant evidence. The Board shall make a final determination with respect to an appeal filed under paragraph (1) not less than 60 days after the date the appeal is filed.

(c) JUDICIAL REVIEW OF ADVERSE DECISION.--

(1) IN GENERAL.--Within 90 days after the date of a final decision by the Board under this section with respect to an adverse action taken against a State, the State may obtain judicial review of the final decision (and the findings incorporated into the final decision) by filing an action in--

(A) the district court of the United States for the judicial district in which the principal or headquarters office of the State agency is located; or

(B) the United States District Court for the District of Columbia.

(2) PROCEDURAL RULES.--The district court in which an action is filed under paragraph (1) shall review the final decision of the Board on the record established in the administrative proceeding, in accordance with the standards of review prescribed by subparagraphs (A) through (E) of section 706(2) of title 5, United States Code[48]. The review shall be on the basis of

ADDEN 2

0000498

the documents and supporting data submitted to the Board.

[48] See Vol. II, 5 U.S.C. 706(2) A - E.

0000499

# Tab 3

# Compilation of the Social Security Laws



## DUTIES OF THE SECRETARY

---

Title Contents Previous Section Next Section

SEC. 452. *[42 U.S.C. 652]* (a) The Secretary shall establish, within the Department of Health and Human Services a separate organizational unit, under the direction of a designee of the Secretary, who shall report directly to the Secretary and who shall--

> (1) establish such standards for State programs for locating noncustodial parents, establishing paternity, and obtaining child support and support for the spouse (or former spouse) with whom the noncustodial parent's child is living as he determines to be necessary to assure that such programs will be effective;
>
> (2) establish minimum organizational and staffing requirements for State units engaged in carrying out such programs under plans approved under this part;
>
> (3) review and approve State plans for such programs;
>
> (4)(A) review data and calculations transmitted by State agencies pursuant to section 454(15)(B) on State program accomplishments with respect to performance indicators for purposes of subsection (g) of this section and section 458;
>
> (B) review annual reports submitted pursuant to section 454(15)(A) and, as appropriate, provide to the State comments, recommendations for additional or alternative corrective actions, and technical assistance; and
>
> (C) conduct audits, in accordance with the Government auditing standards of the Comptroller General of the United States--
>
>> (i) at least once every 3 years (or more frequently, in the case of a State which fails to meet the requirements of this part concerning performance standards and reliability of program data) to assess the completeness, reliability, and security of the data and the accuracy of the reporting systems used in calculating performance indicators under subsection (g) of this section and section 458;
>>
>> (ii) of the adequacy of financial management of the State program operated under the State plan approved under this part, including assessments of--
>>
>>> (I) whether Federal and other funds made available to carry out the State program are being appropriately expended, and are properly and fully accounted for; and
>>>
>>> (II) whether collections and disbursements of support payments are carried out correctly and are fully accounted for; and

*ADDEN 3*

0000500

1/9/2004

(iii) for such other purposes as the Secretary may find necessary;

(5) assist States in establishing adequate reporting procedures and maintain records of the operations of programs established pursuant to this part in each State, and establish procedures to be followed by States for collecting and reporting information required to be provided under this part, and establish uniform definitions (including those necessary to enable the measurement of State compliance with the requirements of this part relating to expedited processes) to be applied in following such procedures;

(6) maintain records of all amounts collected and disbursed under programs established pursuant to the provisions of this part and of the costs incurred in collecting such amounts;

(7) provide technical assistance to the States to help them establish effective systems for collecting child and spousal support and establishing paternity, and specify the minimum requirements of an affidavit to be used for the voluntary acknowledgment of paternity which shall include the social security number of each parent and, after consultation with the States, other common elements as determined by such designee;

(8) receive applications from States for permission to utilize the courts of the United States to enforce court orders for support against noncustodial parents and, upon a finding that (A) another State has not undertaken to enforce the court order of the originating State against the noncustodial parent within a reasonable time, and (B) that utilization of the Federal courts is the only reasonable method of enforcing such order, approve such applications;

(9) operate the Federal Parent Locator Service established by section 453;

(10) not later than three months after the end of each fiscal year, beginning with the year 1977, submit to the Congress a full and complete report on all activities undertaken pursuant to the provisions of this part, which report shall include, but not be limited to, the following:

(A) total program costs and collections set forth in sufficient detail to show the cost to the States and the Federal Government, the distribution of collections to families, State and local governmental units, and the Federal Government; and an identification of the financial impact of the provisions of this part, including--

(i) the total amount of child support payments collected as a result of services furnished during the fiscal year to individuals receiving services under this part;

(ii) the cost to the States and to the Federal Government of so furnishing the services; and

(iii) the number of cases involving families--

(I) who became ineligible for assistance under State programs funded under part A during a month in the fiscal year; and

(II) with respect to whom a child support payment was received in the month;

(B) costs and staff associated with the Office of Child Support Enforcement;

(C) the following data, separately stated for cases where the child is receiving assistance under a State program funded under part A (or

foster care maintenance payments under part E), or formerly received such assistance or payments and the State is continuing to collect support assigned to it pursuant to section 408(a)(3) or under section 471(a)(17) or 1912, and for all other cases under this part:

    (i) the total number of cases in which a support obligation has been established in the fiscal year for which the report is submitted;

    (ii) the total number of cases in which a support obligation has been established;

    (iii) the number of cases in which support was collected during the fiscal year;

    (iv) the total amount of support collected during such fiscal year and distributed as current support;

    (v) the total amount of support collected during such fiscal year and distributed as arrearages;

    (vi) the total amount of support due and unpaid for all fiscal years; and

    (vii) the number of child support cases filed in each State in such fiscal year, and the amount of the collections made in each State in such fiscal year, on behalf of children residing in another State or against parents residing in another State;

(D) the status of all State plans under this part as of the end of the fiscal year last ending before the report is submitted, together with an explanation of any problems which are delaying or preventing approval of State plans under this part;

(E) data, by State, on the use of the Federal Parent Locator Service, and the number of locate requests submitted without the noncustodial parent's social security account number;

(F) the number of cases, by State, in which an applicant for or recipient assistance under a State program funded under part A has refused to cooperate in identifying and locating the noncustodial parent and the number of cases in which refusal so to cooperate is based on good cause (as determined by the State);

(G) data, by State, on use of the Internal Revenue Service for collections, the number of court orders on which collections were made, the number of paternity determinations made and the number of parents located, in sufficient detail to show the cost and benefits to the States and to the Federal Government;

(H) the major problems encountered which have delayed or prevented implementation of the provisions of this part during the fiscal year last ending prior to the submission of such report; and

(I) compliance, by State, with the standards established pursuant to subsections (h) and (i); and

(11) not later than October 1, 1996, after consulting with the State directors of programs under this part, promulgate forms to be used by States in interstate cases for--

    (A) collection of child support through income withholding;

    (B) imposition of liens; and

    (C) administrative subpoenas.

0000502

(b) The Secretary shall, upon the request of any State having in effect a State plan approved under this part, certify to the Secretary of the Treasury for collection pursuant to the provisions of section 6305 of the Internal Revenue Code of 1954 [104] the amount of any child support obligation (including any support obligation with respect to the parent who is living with the child and receiving assistance under the State program funded under part A) which is assigned to such State or is undertaken to be collected by such State pursuant to section 454(4). No amount may be certified for collection under this subsection except the amount of the delinquency under a court or administrative order for support and upon a showing by the State that such State has made diligent and reasonable efforts to collect such amounts utilizing its own collection mechanisms, and upon an agreement that the State will reimburse the Secretary of the Treasury for any costs involved in making the collection. All reimbursements shall be credited to the appropriation accounts which bore all or part of the costs involved in making the collections. The Secretary after consultation with the Secretary of the Treasury may, by regulation, establish criteria for accepting amounts for collection and for making certification under this subsection including imposing such limitations on the frequency of making such certifications under this subsection.

(c) The Secretary of the Treasury shall from time to time pay to each State for distribution in accordance with the provisions of section 457 the amount of each collection made on behalf of such State pursuant to subsection (b).

(d)(1) Except as provided in paragraph (3), the Secretary shall not approve the initial and annually updated advance automated data processing planning document, referred to in section 454(16), unless he finds that such document, when implemented, will generally carry out the objectives of the management system referred to in such subsection, and such document--

> (A) provides for the conduct of, and reflects the results of, requirements analysis studies, which include consideration of the program mission, functions, organization, services, constraints, and current support, of, in, or relating to, such system,
> (B) contains a description of the proposed management system referred to in section 454(16), including a description of information flows, input data, and output reports and uses,
> (C) sets forth the security and interface requirements to be employed in such management system,
> (D) describes the projected resource requirements for staff and other needs, and the resources available or expected to be available to meet such requirements,
> (E) contains an implementation plan and backup procedures to handle possible failures,
> (F) contains a summary of proposed improvement of such management system in terms of qualitative and quantitative benefits, and
> (G) provides such other information as the Secretary determines under regulation is necessary.

(2)(A) The Secretary shall through the separate organizational unit established

0000503

pursuant to subsection (a), on a continuing basis, review, assess, and inspect the planning, design, and operation of, management information systems referred to in section 454(16), with a view to determining whether, and to what extent, such systems meet and continue to meet requirements imposed under paragraph (1) and the conditions specified under section 454(16).

(B) If the Secretary finds with respect to any statewide management information system referred to in section 454(16) that there is a failure substantially to comply with criteria, requirements, and other undertakings, prescribed by the advance automated data processing planning document theretofore approved by the Secretary with respect to such system, then the Secretary shall suspend his approval of such document until there is no longer any such failure of such system to comply with such criteria, requirements, and other undertakings so prescribed.

(3) The Secretary may waive any requirement of paragraph (1) or any condition specified under section 454(16), and shall waive the single statewide system requirement under sections 454(16) and 454A, with respect to a State if--

(A) the State demonstrates to the satisfaction of the Secretary that the State has or can develop an alternative system or systems that enable the State--
(i) for purposes of section 409(a)(8), to achieve the paternity establishment percentages (as defined in section 452(g)(2)) and other performance measures that may be established by the Secretary;
(ii) to submit data under section 454(15)(B) that is complete and reliable;
(iii) to substantially comply with the requirements of this part; and
(iv) in the case of a request to waive the single statewide system requirement, to--
(I) meet all functional requirements of sections 454(16) and 454A;
(II) ensure that calculation of distributions meets the requirements of section 457 and accounts for distributions to children in different families or in different States or sub-State jurisdictions, and for distributions to other States;
(III) ensure that there is only one point of contact in the State which provides seamless case processing for all interstate case processing and coordinated, automated intrastate case management;
(IV) ensure that standardized data elements, forms, and definitions are used throughout the State;
(V) complete the alternative system in no more time than it would take to complete a single statewide system that meets such requirement and
(VI) process child support cases as quickly, efficiently, and effectively as such cases would be processed through a single statewide system that meets such requirement;
(B)(i) the waiver meets the criteria of paragraphs (1), (2), and (3) of section 1115(c); or
(ii) the State provides assurances to the Secretary that steps will be taken to

otherwise improve the State's child support enforcement program; and
(C) in the case of a request to waive the single statewide system requirement, the State has submitted to the Secretary separate estimates of the total cost of a single statewide system that meets such requirement, and of any such alternative system or systems, which shall include estimates of the cost of developing and completing the system and of operating and maintaining the system for 5 years, and the Secretary has agreed with the estimates.

(e) The Secretary shall provide such technical assistance to States as he determines necessary to assist States to plan, design, develop, or install and provide for the security of, the management information systems referred to in section 454(16).

(f) The Secretary shall issue regulations to require that State agencies administering the child support enforcement program under this part petition for the inclusion of medical support as part of any child support order whenever health care coverage is available to the noncustodial parent at a reasonable cost. Such regulation shall also provide for improved information exchange between such State agencies and the State agencies administering the State medicaid programs under title XIX with respect to the availability of health insurance coverage.

(g)(1) A State's program under this part shall be found, for purposes of section 409(a)(8), not to have complied substantially with the requirements of this part unless, for any fiscal year beginning on or after October 1, 1994, its paternity establishment percentage for such fiscal year is based on reliable data and (rounded to the nearest whole percentage point) equals or exceeds--

(A) 90 percent;
(B) for a State with a paternity establishment percentage of not less than 75 percent but less than 90 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 2 percentage points;
(C) for a State with a paternity establishment percentage of not less than 50 percent but less than 75 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 3 percentage points;
(D) for a State with a paternity establishment percentage of not less than 45 percent but less than 50 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 4 percentage points;
(E) for a State with a paternity establishment percentage of not less than 40 percent but less than 45 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 5 percentage points; or
(F) for a State with a paternity establishment percentage of less than 40 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 6 percentage points.

In determining compliance under this section, a State may use as its paternity establishment percentage either the State's IV-D paternity establishment percentage (as defined in paragraph (2)(A)) or the State's statewide paternity establishment percentage (as defined in paragraph (2)(B)).

(2) For purposes of this section--

    (A) the term "IV-D paternity establishment percentage" means, with respect to a State for a fiscal year, the ratio (expressed as a percentage) that the total number of children--

        (i) who have been born out of wedlock,

        (ii)(I) except as provided in the last sentence of this paragraph, with respect to whom assistance is being provided under the State program funded under part A in the fiscal year or, at the option of the State, as of the end of such year, or (II) with respect to whom services are being provided under the State's plan approved under this part in the fiscal year or, at the option of the State, as of the end of such year pursuant to an application submitted under section 454(4)(A)(ii), and

        (iii) the paternity of whom has been established or acknowledged,

bears to the total number of children born out of wedlock and (except as provided in such last sentence) with respect to whom assistance was being provided under the State program funded under part A as of the end of the preceding fiscal year or with respect to whom services were being provided under the State's plan approved under this part as of the end of the preceding fiscal year pursuant to an application submitted under section 454(4)(A)(ii);

(B) the term "statewide paternity establishment percentage" means, with respect to a State for a fiscal year, the ratio (expressed as a percentage) that the total number of minor children--

        (i) who have been born out of wedlock, and

        (ii) the paternity of whom has been established or acknowledged during the fiscal year,

bears to the total number of children born out of wedlock during the preceding fiscal year; and

(C) the term "reliable data" means the most recent data available which are found by the Secretary to be reliable for purposes of this section.

For purposes of subparagraphs (A) and (B), the total number of children shall not include any child with respect to whom assistance is being provided under the State program funded under part A by reason of the death of a parent unless paternity is established for such child or any child with respect to whom an applicant or recipient is found by the State to qualify for a good cause or other exception to cooperation pursuant to section 454(29).

(3)(A) The Secretary may modify the requirements of this subsection to take into account such additional variables as the Secretary identifies (including the percentage of children in a State who are born out of wedlock or for whom support has not been established) that affect the ability of a State to meet the requirements of this subsection.

0000506

(B) The Secretary shall submit an annual report to the Congress that sets forth the data upon which the paternity establishment percentages for States for a fiscal year are based, lists any additional variables the Secretary has identified under subparagraph (A), and describes State performance in establishing paternity.[105]

(h) The standards required by subsection (a)(1) shall include standards establishing time limits governing the period or periods within which a State must accept and respond to requests (from States, jurisdictions thereof, or individuals who apply for services furnished by the State agency under this part or with respect to whom an assignment pursuant to section 408(a)(3) is in effect) for assistance in establishing and enforcing support orders, including requests to locate noncustodial parents, establish paternity, and initiate proceedings to establish and collect child support awards.

(i) The standards required by subsection (a)(1) shall include standards establishing time limits governing the period or periods within which a State must distribute, in accordance with section 457, amounts collected as child support pursuant to the State's plan approved under this part.

(j) Out of any money in the Treasury of the United States not otherwise appropriated, there is hereby appropriated to the Secretary for each fiscal year an amount equal to 1 percent of the total amount paid to the Federal Government pursuant to a plan approved under this part during the immediately preceding fiscal year (as determined on the basis of the most recent reliable data available to the Secretary as of the end of the third calendar quarter following the end of such preceding fiscal year), which shall be available for use by the Secretary, either directly or through grants, contracts, or interagency agreements, for--

> (1) information dissemination and technical assistance to States, training of State and Federal staff, staffing studies, and related activities needed to improve programs under this part (including technical assistance concerning State automated systems required by this part); and
> (2) research, demonstration, and special projects of regional or national significance relating to the operation of State programs under this part.

The amount appropriated under this subsection shall remain available until expended.

(k)(1) If the Secretary receives a certification by a State agency in accordance with the requirements of section 454(31) that an individual owes arrearages of child support in an amount exceeding $5,000, the Secretary shall transmit such certification to the Secretary of State for action (with respect to denial, revocation, or limitation of passports) pursuant to paragraph (2).

> (2) The Secretary of State shall, upon certification by the Secretary transmitted under paragraph (1), refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual.
> (3) The Secretary and the Secretary of State shall not be liable to an

individual for any action with respect to a certification by a State agency under this section.

(l) The Secretary, through the Federal Parent Locator Service, may aid State agencies providing services under State programs operated pursuant to this part and financial institutions doing business in two or more States in reaching agreements regarding the receipt from such institutions, and the transfer to the State agencies, of information that may be provided pursuant to section 466(a)(17)(A)(i), except that any State that, as of the date of the enactment of this subsection, is conducting data matches pursuant to section 466(a)(17)(A)(i) shall have until January 1, 2000, to allow the Secretary to obtain such information from such institutions that are operating in the State. For purposes of section 1113(d) of the Right to Financial Privacy Act of 1978, a disclosure pursuant to this subsection shall be considered a disclosure pursuant to a Federal statute.

[104] See Vol. II, P.L. 83-591.

[105] See Vol. II, P.L. 100-485, §111(f)(3), with respect to the Secretary's collection of data necessary to implement the requirements of this subsection.

Top of Document

0000508

# Tab 4

# Compilation of the Social Security Laws

Social Security Online
www.socialsecurity.gov    Home    Questions?    How to Contact Us    Search
Compilation Home



## STATE PLAN FOR CHILD AND SPOUSAL SUPPORT

Title Contents Previous Section Next Section

SEC. 454. *[42 U.S.C. 654]* A State plan for child and spousal support must--

(1) provide that it shall be in effect in all political subdivisions of the State;

(2) provide for financial participation by the State;

(3) provide for the establishment or designation of a single and separate organizational unit, which meets such staffing and organizational requirements as the Secretary may by regulation prescribe, within the State to administer the plan;

(4) provide that the State will--

    (A) provide services relating to the establishment of paternity or the establishment, modification, or enforcement of child support obligations, as appropriate, under the plan with respect to--

        (i) each child for whom (I) assistance is provided under the State program funded under part A of this title, (II) benefits or services for foster care maintenance are provided under the State program funded under part E of this title, (III) medical assistance is provided under the State plan approved under title XIX, or (IV) cooperation is required pursuant to section 6(l)(1) of the Food Stamp Act of 1977 (7 U.S.C. 2015(l)(1)), unless, in accordance with paragraph (29), good cause or other exceptions exist;

        (ii) any other child, if an individual applies for such services with respect to the child; and

    (B) enforce any support obligation established with respect to--

        (i) a child with respect to whom the State provides services under the plan; or

        (ii) the custodial parent of such a child;

(5) provide that (A) in any case in which support payments are collected for an individual with respect to whom an assignment pursuant to section 408(a)(3) is effective, such payments shall be made to the State for distribution pursuant to section 457 and shall not be paid directly to the family, and the individual will be notified on a monthly basis (or on a quarterly basis for so long as the Secretary determines with respect to a State that requiring such notice on a monthly basis would impose an unreasonable administrative burden) of the amount of the support payments collected, and (B) in any case in which support payments are collected for an individual pursuant to the assignment made under section 1912, such payments shall be made to the State for distribution pursuant to section 1912, except that this clause

*ADDEN 4*

shall not apply to such payments for any month after the month in which the individual ceases to be eligible for medical assistance;

(6) provide that--

(A) services under the plan shall be made available to residents of other States on the same terms as to residents of the State submitting the plan;

(B) an application fee for furnishing such services shall be imposed on an individual, other than an individual receiving assistance under a State program funded under part A or E, or under a State plan approved under title XIX, or who is required by the State to cooperate with the State agency administering the program under this part pursuant to subsection (l) or (m) of section 6 of the Food Stamp Act of 1977[116], and shall be paid by the individual applying for such services, or recovered from the absent parent, or paid by the State out of its own funds (the payment of which from State funds shall not be considered as an administrative cost of the State for the operation of the plan, and shall be considered income to the program), the amount of which (i) will not exceed $25 (or such higher or lower amount (which shall be uniform for all States) as the Secretary may determine to be appropriate for any fiscal year to reflect increases or decreases in administrative costs), and (ii) may vary among such individuals on the basis of ability to pay (as determined by the State);

(C) a fee of not more than $25 may be imposed in any case where the State requests the Secretary of the Treasury to withhold past-due support owed to or on behalf of such individual from a tax refund pursuant to section 464(a)(2);

(D) a fee (in accordance with regulations of the Secretary) for performing genetic tests may be imposed on any individual who is not a recipient of assistance under a State program funded under part A, and

(E) any costs in excess of the fees so imposed may be collected--

(i) from the parent who owes the child or spousal support obligation involved;, or

(ii) at the option of the State, from the individual to whom such services are made available, but only if such State has in effect a procedure whereby all persons in such State having authority to order child or spousal support are informed that such costs are to be collected from the individual to whom such services were made available;[117]

(7) provide for entering into cooperative arrangements with appropriate courts and law enforcement officials and Indian tribes or tribal organizations (as defined in subsections (e) and (l) of section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B[118])) (A) to assist the agency administering the plan, including the entering into of financial arrangements with such courts and officials in order to assure optimum results under such program, and (B) with respect to any other matters of common concern to such courts or officials and the agency administering the plan;

(8) provide that, for the purpose of establishing parentage, establishing,

setting the amount of, modifying, or enforcing child support obligations, or making or enforcing a child custody or visitation determination, as defined in section 463(d)(1) the agency administering the plan will establish a service to locate parents utilizing--

    (A) all sources of information and available records; and

    (B) the Federal Parent Locator Service established under section 453, and shall, subject to the privacy safeguards required under paragraph (26), disclose only the information described in sections 453 and 463 to the authorized persons specified in such sections for the purpose specified in such sections;

(9) provide that the State will, in accordance with standards prescribed by the Secretary, cooperate with any other State--

    (A) in establishing paternity, if necessary,

    (B) in locating a noncustodial parent residing in the State (whether or not permanently) against whom any action is being taken under a program established under a plan approved under this part in another State,

    (C) in securing compliance by a noncustodial parent residing in such State (whether or not permanently) with an order issued by a court of competent jurisdiction against such parent for the support and maintenance of the child or children or the parent of such child or children with respect to whom aid is being provided under the plan of such other State;

    (D) in carrying out other functions required under a plan approved under this part;

    (E) not later than March 1, 1997, in using the forms promulgated pursuant to section 452(a)(11) for income withholding, imposition of liens, and issuance of administrative subpoenas in interstate child support cases;

(10) provide that the State will maintain a full record of collections and disbursements made under the plan and have an adequate reporting system;

(11)(A) provide that amounts collected as support shall be distributed as provided in section 457; and

(B) provide that any payment required to be made under section 456 or 457 to a family shall be made to the resident parent, legal guardian, or caretaker relative having custody of or responsibility for the child or children;

(12) provide for the establishment of procedures to require the State to provide individuals who are applying for or receiving services under the State plan, or who are parties to cases in which services are being provided under the State plan--

    (A) with notice of all proceedings in which support obligations might be established or modified; and

    (B) with a copy of any order establishing or modifying a child support obligation, or (in the case of a petition for modification) a notice of determination that there should be no change in the amount of the child support award, within 14 days after issuance of such order or determination;

(13) provide that the State will comply with such other requirements and

standards as the Secretary determines to be necessary to the establishment of an effective program for locating noncustodial parents, establishing paternity, obtaining support orders, and collecting support payments and provide that information requests by parents who are residents of other States be treated with the same priority as requests by parents who are residents of the State submitting the plan;

(14)(A) comply with such bonding requirements, for employees who receive, disburse, handle, or have access to, cash, as the Secretary shall by regulations prescribe;[119]

(B) maintain methods of administration which are designed to assure that persons responsible for handling cash receipts shall not participate in accounting or operating functions which would permit them to conceal in the accounting records the misuse of cash receipts (except that the Secretary shall by regulations provide for exceptions to this requirement in the case of sparsely populated areas where the hiring of unreasonable additional staff would otherwise be necessary);

(15) provide for--

(A) a process for annual reviews of and reports to the Secretary on the State program operated under the State plan approved under this part, including such information as may be necessary to measure State compliance with Federal requirements for expedited procedures, using such standards and procedures as are required by the Secretary, under which the State agency will determine the extent to which the program is operated in compliance with this part; and

(B) a process of extracting from the automated data processing system required by paragraph (16) and transmitting to the Secretary data and calculations concerning the levels of accomplishment (and rates of improvement) with respect to applicable performance indicators (including paternity establishment percentages) to the extent necessary for purposes of sections 452(g) and 458;

(16) provide for the establishment and operation by the State agency, in accordance with an (initial and annually updated) advance automated data processing planning document approved under section 452(d), of a statewide automated data processing and information retrieval system meeting the requirements of section 454A designed effectively and efficiently to assist management in the administration of the State plan, so as to control, account for, and monitor all the factors in the support enforcement collection and paternity determination process under such plan;

(17) provide that the State will have in effect an agreement with the Secretary entered into pursuant to section 463 for the use of the Parent Locator Service established under section 453 and, provide that the State will accept and transmit to the Secretary requests for information authorized under the provisions of the agreement to be furnished by such Service to authorized persons, will impose and collect (in accordance with regulations of the Secretary) a fee sufficient to cover the costs to the State and to the Secretary incurred by reason of such requests, will transmit to the Secretary from time to time (in accordance with such regulations) so much of the fees collected as are attributable to such costs to the Secretary so incurred, and during the period that such agreement is in effect will otherwise comply with

0000512

such agreement and regulations of the Secretary with respect thereto;

(18) provide that the State has in effect procedures necessary to obtain payment of past-due support from overpayments made to the Secretary of the Treasury as set forth in section 464, and take all steps necessary to implement and utilize such procedures;

(19) provide that the agency administering the plan--

(A) shall determine on a periodic basis, from information supplied pursuant to section 508 of the Unemployment Compensation Amendments of 1976[120], whether any individuals receiving compensation under the State's unemployment compensation law (including amounts payable pursuant to any agreement under any Federal unemployment compensation law) owe child support obligations which are being enforced by such agency; and

(B) shall enforce any such child support obligations which are owed by such an individual but are not being met--

(i) through an agreement with such individual to have specified amounts withheld from compensation otherwise payable to such individual and by submitting a copy of any such agreement to the State agency administering the unemployment compensation law;

(ii) in the absence of such an agreement, by bringing legal process (as defined in section 459(i)(5) of this Act) to require the withholding of amounts from such compensation;

(20) provide, to the extent required by section 466, that the State (A) shall have in effect all of the laws to improve child support enforcement effectiveness which are referred to in that section, and (B) shall implement the procedures which are prescribed in or pursuant to such laws;

(21)(A) at the option of the State, impose a late payment fee on all overdue support (as defined in section 466(e)) under any obligation being enforced under this part, in an amount equal to a uniform percentage determined by the State (not less than 3 percent nor more than 6 percent) of the overdue support, which shall be payable by the noncustodial parent owing the overdue support; and

(B) assure that the fee will be collected in addition to, and only after full payment of, the overdue support, and that the imposition of the late payment fee shall not directly or indirectly result in a decrease in the amount of the support which is paid to the child (or spouse) to whom, or on whose behalf, it is owed;

(22) in order for the State to be eligible to receive any incentive payments under section 458, provide that, if one or more political subdivisions of the State participate in the costs of carrying out activities under the State plan during any period, each such subdivision shall be entitled to receive an appropriate share (as determined by the State) of any such incentive payments made to the State for such period, taking into account the efficiency and effectiveness of the activities carried out under the State plan by such political subdivision;

(23) provide that the State will regularly and frequently publicize, through public service announcements, the availability of child support enforcement services under the plan and otherwise, including information as to any

0000513

application fees for such services and a telephone number or postal address at which further information may be obtained and will publicize the availability and encourage the use of procedures for voluntary establishment of paternity and child support by means the State deems appropriate;

(24) provide that the State will have in effect an automated data processing and information retrieval system--

(A) by October 1, 1997, which meets all requirements of this part which were enacted on or before the date of enactment of the Family Support Act of 1988,

(B) by October 1, 2000, which meets all requirements of this part enacted on or before the date of the enactment of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996[121], except that such deadline shall be extended by 1 day for each day (if any) by which the Secretary fails to meet the deadline imposed by section 344(a)(3) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996;

(25) provide that if a family with respect to which services are provided under the plan ceases to receive assistance under the State program funded under part A, the State shall provide appropriate notice to the family and continue to provide such services, subject to the same conditions and on the same basis as in the case of other individuals to whom services are furnished under the plan, except that an application or other request to continue services shall not be required of such a family and paragraph (6)(B) shall not apply to the family;

(26) have in effect safeguards, applicable to all confidential information handled by the State agency, that are designed to protect the privacy rights of the parties, including--

(A) safeguards against unauthorized use or disclosure of information relating to proceedings or actions to establish paternity, or to establish, modify or enforce support, or to make or enforce a child custody determination;

(B) prohibitions against the release of information on the whereabouts of 1 party or the child to another party against whom a protective order with respect to the former party or the child has been entered;

(C) prohibitions against the release of information on the whereabouts of 1 party or the child to another person if the State has reason to believe that the release of the information may to that person result in physical or emotional harm to the party or the child;

(D) in cases in which the prohibitions under subparagraphs (B) and (C) apply, the requirement to notify the Secretary, for purposes of section 453(b)(2), that the State has reasonable evidence of domestic violence or child abuse against a party or the child and that the disclosure of such information could be harmful to the party or the child; and

(E) procedures providing that when the Secretary discloses information about a parent or child to a State court or an agent of a State court described in section 453(c)(2) or 463(d)(2)(B), and advises that court or agent that the Secretary has been notified that there is reasonable evidence of domestic violence or child abuse pursuant to section 453 (b)(2), the court shall determine whether disclosure to any other person

0000514

of information received from the Secretary could be harmful to the parent or child and, if the court determines that disclosure to any other person could be harmful, the court and its agents shall not make any such disclosure;

(27) provide that, on and after October 1, 1998, the State agency will--

(A) operate a State disbursement unit in accordance with section 454B; and

(B) have sufficient State staff (consisting of State employees) and (at State option) contractors reporting directly to the State agency to--

(i) monitor and enforce support collections through the unit in cases being enforced by the State pursuant to section 454(4) (including carrying out the automated data processing responsibilities described in section 454A(g)); and

(ii) take the actions described in section 466(c)(1) in appropriate cases;

(28) provide that, on and after October 1, 1997, the State will operate a State Directory of New Hires in accordance with section 453A;

(29) provide that the State agency responsible for administering the State plan--

(A) shall make the determination (and redetermination at appropriate intervals) as to whether an individual who has applied for or is receiving assistance under the State program funded under part A, the State program under part E, the State program under title XIX, or the food stamp program, as defined under section 3(h) of the Food Stamp Act of 1977 (7 U.S.C. 2012(h)[122]), is cooperating in good faith with the State in establishing the paternity of, or in establishing, modifying, or enforcing a support order for, any child of the individual by providing the State agency with the name of, and such other information as the State agency may require with respect to, the noncustodial parent of the child, subject to good cause and other exceptions which--

(i) in the case of the State program funded under part A, the State program under part E, or the State program under title XIX shall, at the option of the State, be defined, taking into account the best interests of the child, and applied in each case, by the State agency administering such program; and

(ii) in the case of the food stamp program, as defined under section 3(h) of the Food Stamp Act of 1977 (7 U.S.C. 2012(h)), shall be defined and applied in each case under that program in accordance with section 6(l)(2) of the Food Stamp Act of 1977 (7 U.S.C. 2015(l)(2));

(B) shall require the individual to supply additional necessary information and appear at interviews, hearings, and legal proceedings;

(C) shall require the individual and the child to submit to genetic tests pursuant to judicial or administrative order;

(D) may request that the individual sign a voluntary acknowledgment of paternity, after notice of the rights and consequences of such an acknowledgment, but may not require the individual to sign an acknowledgment or otherwise relinquish the right to genetic tests as a condition of cooperation and eligibility for assistance under the State

0000515

program funded under part A, the State program under part E, the State program under title XIX, or the food stamp program, as defined under section 3(h) of the Food Stamp Act of 1977 (7 U.S.C. 2012(h)); and

(E) shall promptly notify the individual and the State agency administering the State program funded under part A, the State agency administering the State program under part E, the State agency administering the State program under title XIX, or the State agency administering the food stamp program, as defined under section 3(h) of the Food Stamp Act of 1977 (7 U.S.C. 2012(h)), of each such determination, and if noncooperation is determined, the basis therefor;

(30) provide that the State shall use the definitions established under section 452(a)(5) in collecting and reporting information as required under this part;

(31) provide that the State agency will have in effect a procedure for certifying to the Secretary, for purposes of the procedure under section 452 (k), determinations that individuals owe arrearages of child support in an amount exceeding $5,000, under which procedure--

(A) each individual concerned is afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination; and

(B) the certification by the State agency is furnished to the Secretary in such format, and accompanied by such supporting documentation, as the Secretary may require;

(32)(A) provide that any request for services under this part by a foreign reciprocating country or a foreign country with which the State has an arrangement described in section 459A(d) shall be treated as a request by a State;

(B) provide, at State option, notwithstanding paragraph (4) or any other provision of this part, for services under the plan for enforcement of a spousal support order not described in paragraph (4)(B) entered by such a country (or subdivision); and

(C) provide that no applications will be required from, and no costs will be assessed for such services against, the foreign reciprocating country or foreign obligee (but costs may at State option be assessed against the obligor); and

(33) provide that a State that receives funding pursuant to section 428 and that has within its borders Indian country (as defined in section 1151 of title 18, United States Code) may enter into cooperative agreements with an Indian tribe or tribal organization (as defined in subsections (e) and (l) of section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450b)), if the Indian tribe or tribal organization demonstrates that such tribe or organization has an established tribal court system or a Court of Indian Offenses with the authority to establish paternity, establish, modify, or enforce support orders or, and to enter support orders in accordance with child support guidelines established or adopted by such tribe or organization, under which the State and tribe or organization, under which the State and tribe or organization shall provide for the cooperative delivery of child support enforcement services in Indian country and for the forwarding of all collections pursuant to the functions performed by the tribe

0000516

or organization to the State agency, or conversely, by the State agency to the tribe or organization, which shall distribute such collections in accordance with such agreement.

The State may allow the jurisdiction which makes the collection involved to retain any application fee under paragraph (6)(B) or any late payment fee under paragraph (21). Nothing in paragraph (33) shall void any provision of any cooperative agreement entered into before the date of the enactment of such paragraph, nor shall such paragraph deprive any State of jurisdiction over Indian country (as so defined) that is lawfully exercised under section 402 of the Act entitled "An Act to prescribe penalties for certain acts of violence or intimidation, and for other purposes", approved April 11, 1968 (25 U.S.C. 1322) .

[116] See Vol. II, P.L. 88-525, §§6(l) and (m).

[117] See Vol. II, 31 U.S.C. 9701, with respect to fees and charges for Government services and things of value.

[118] See Vol. II, P.L. 94-437, §4.

[119] See Vol. II, 31 U.S.C. 9309, with respect to priority of sureties.

[120] See Vol II, P.L. 94-566.

[121] August 22, 1996 [P.L. 104-193, 110 Stat. 2105].

[122] See Vol. II, P.L. 88-525, §3(h).

Top of Document

0000517

# Tab 5

# Compilation of the Social Security Laws



## INCENTIVE PAYMENTS TO STATES

Title Contents Previous Section Next Section

SEC. 458.[147] *[42 U.S.C. 658a]* (a) IN GENERAL.--In addition to any other payment under this part, the Secretary shall, subject to subsection (f), make an incentive payment to each State for each fiscal year in an amount determined under subsection (b).

(b) AMOUNT OF INCENTIVE PAYMENT.--

(1) IN GENERAL.--The incentive payment for a State for a fiscal year is equal to the incentive payment pool for the fiscal year, multiplied by the State incentive payment share for the fiscal year.

(2) INCENTIVE PAYMENT POOL.--

(A) IN GENERAL.--In paragraph (1), the term "incentive payment pool" means--

(i) $422,000,000 for fiscal year 2000;

(ii) $429,000,000 for fiscal year 2001;

(iii) $450,000,000 for fiscal year 2002;

(iv) $461,000,000 for fiscal year 2003;

(v) $454,000,000 for fiscal year 2004;

(vi) $446,000,000 for fiscal year 2005;

(vii) $458,000,000 for fiscal year 2006;

(viii) $471,000,000 for fiscal year 2007;

(ix) $483,000,000 for fiscal year 2008; and

(x) for any succeeding fiscal year, the amount of the incentive payment pool for the fiscal year that precedes such succeeding fiscal year, multiplied by the percentage (if any) by which the CPI for such preceding fiscal year exceeds the CPI for the second preceding fiscal year.

(B) CPI.--For purposes of subparagraph (A), the CPI for a fiscal year is the average of the Consumer Price Index for the 12-month period ending on September 30 of the fiscal year. As used in the preceding sentence, the term "Consumer Price Index" means the last Consumer Price Index for all-urban consumers published by the Department of Labor.

(3) STATE INCENTIVE PAYMENT SHARE.--In paragraph (1), the term "State incentive payment share" means, with respect to a fiscal year--

(A) the incentive base amount for the State for the fiscal year; divided

*ADDEN 5*

by
(B) the sum of the incentive base amounts for all of the States for the fiscal year.

(4) INCENTIVE BASE AMOUNT.--In paragraph (3), the term "incentive base amount" means, with respect to a State and a fiscal year, the sum of the applicable percentages (determined in accordance with paragraph (6)) multiplied by the corresponding maximum incentive base amounts for the State for the fiscal year, with respect to each of the following measures of State performance for the fiscal year:

(A) The paternity establishment performance level.
(B) The support order performance level.
(C) The current payment performance level.
(D) The arrearage payment performance level.
(E) The cost-effectiveness performance level.

(5) Maximum incentive base amount.--

(A) IN GENERAL.--For purposes of paragraph (4), the maximum incentive base amount for a State for a fiscal year is--

(i) with respect to the performance measures described in subparagraphs (A), (B), and (C) of paragraph (4), the State collections base for the fiscal year; and
(ii) with respect to the performance measures described in subparagraphs (D) and (E) of paragraph (4), 75 percent of the State collections base for the fiscal year.

(B) DATA REQUIRED TO BE COMPLETE AND RELIABLE.--Notwithstanding subparagraph (A), the maximum incentive base amount for a State for a fiscal year with respect to a performance measure described in paragraph (4) is zero, unless the Secretary determines, on the basis of an audit performed under section 452(a)(4)(C)(i), that the data which the State submitted pursuant to section 454(15)(B) for the fiscal year and which is used to determine the performance level involved is complete and reliable.

(C) STATE COLLECTIONS BASE.--For purposes of subparagraph (A), the State collections base for a fiscal year is equal to the sum of--

(i) 2 times the sum of--

(I) the total amount of support collected during the fiscal year under the State plan approved under this part in cases in which the support obligation involved is required to be assigned to the State pursuant to part A or E of this title or title XIX; and
(II) the total amount of support collected during the fiscal year under the State plan approved under this part in cases in which the support obligation involved was so assigned but, at the time of collection, is not required to be so assigned; and

(ii) the total amount of support collected during the fiscal year under the State plan approved under this part in all other cases.

(6) DETERMINATION OF APPLICABLE PERCENTAGES BASED ON PERFORMANCE LEVELS.--

(A) PATERNITY ESTABLISHMENT.--

0000519

(i) DETERMINATION OF PATERNITY ESTABLISHMENT PERFORMANCE LEVEL.--The paternity establishment performance level for a State for a fiscal year is, at the option of the State, the IV-D paternity establishment percentage determined under section 452(g)(2)(A) or the statewide paternity establishment percentage determined under section 452(g)(2)(B).

(ii) DETERMINATION OF APPLICABLE PERCENTAGE.--The applicable percentage with respect to a State's paternity establishment performance level is as follows:

| If the paternity establishment performance level is: | | The applicable percentage is: |
|---|---|---|
| **At least:** | **But less than:** | |
| 80% | | 100 |
| 79% | 80% | 98 |
| 78% | 79% | 96 |
| 77% | 78% | 94 |
| 76% | 77% | 92 |
| 75% | 76% | 90 |
| 74% | 75% | 88 |
| 73% | 74% | 86 |
| 72% | 73% | 84 |
| 71% | 72% | 82 |
| 70% | 71% | 80 |
| 69% | 70% | 79 |
| 68% | 69% | 78 |
| 67% | 68% | 77 |
| 66% | 67% | 76 |
| 65% | 66% | 75 |
| 64% | 65% | 74 |
| 63% | 64% | 73 |
| 62% | 63% | 72 |
| 61% | 62% | 71 |
| 60% | 61% | 70 |
| 59% | 60% | 69 |
| 58% | 59% | 68 |
| 57% | 58% | 67 |
| 56% | 57% | 66 |

| | | |
|---|---|---|
| 55% | 56% | 65 |
| 54% | 55% | 64 |
| 53% | 54% | 63 |
| 52% | 53% | 62 |
| 51% | 52% | 61 |
| 50% | 51% | 60 |
| 0% | 50% | 0. |

Notwithstanding the preceding sentence, if the paternity establishment performance level of a State for a fiscal year is less than 50 percent but exceeds by at least 10 percentage points the paternity establishment performance level of the State for the immediately preceding fiscal year, then the applicable percentage with respect to the State's paternity establishment performance level is 50 percent.

    (B) ESTABLISHMENT OF CHILD SUPPORT ORDERS.--
        (i) Determination of support order performance level.--The support order performance level for a State for a fiscal year is the percentage of the total number of cases under the State plan approved under this part in which there is a support order during the fiscal year.
        (ii) Determination of applicable percentage.--The applicable percentage with respect to a State's support order performance level is as follows:

| If the support order performance level is: | | |
|---|---|---|
| At least: | But less than: | The applicable percentage is: |
| 80% | | 100 |
| 79% | 80% | 98 |
| 78% | 79% | 96 |
| 77% | 78% | 94 |
| 76% | 77% | 92 |
| 75% | 76% | 90 |
| 74% | 75% | 88 |
| 73% | 74% | 86 |
| 72% | 73% | 84 |
| 71% | 72% | 82 |
| 70% | 71% | 80 |
| | | |

0000521

| 69% | 70% | 79 |
|-----|-----|-----|
| 68% | 69% | 78 |
| 67% | 68% | 77 |
| 66% | 67% | 76 |
| 65% | 66% | 75 |
| 64% | 65% | 74 |
| 63% | 64% | 73 |
| 62% | 63% | 72 |
| 61% | 62% | 71 |
| 60% | 61% | 70 |
| 59% | 60% | 69 |
| 58% | 59% | 68 |
| 57% | 58% | 67 |
| 56% | 57% | 66 |
| 55% | 56% | 65 |
| 54% | 55% | 64 |
| 53% | 54% | 63 |
| 52% | 53% | 62 |
| 51% | 52% | 61 |
| 50% | 51% | 60 |
| 0% | 50% | 0. |

Notwithstanding the preceding sentence, if the support order performance level of a State for a fiscal year is less than 50 percent but exceeds by at least 5 percentage points the support order performance level of the State for the immediately preceding fiscal year, then the applicable percentage with respect to the State's support order performance level is 50 percent.

    (C) COLLECTIONS ON CURRENT CHILD SUPPORT DUE.--
        (i) DETERMINATION OF CURRENT PAYMENT PERFORMANCE LEVEL.-- The current payment performance level for a State for a fiscal year is equal to the total amount of current support collected during the fiscal year under the State plan approved under this part divided by the total amount of current support owed during the fiscal year in all cases under the State plan, expressed as a percentage.
        (ii) DETERMINATION OF APPLICABLE PERCENTAGE.--The applicable percentage with respect to a State's current payment performance level is as follows:

0000522

| If the support order performance level is: | | The applicable percentage is: |
|---|---|---|
| **At least:** | **But less than:** | |
| 80% | | 100 |
| 79% | 80% | 98 |
| 78% | 79% | 96 |
| 77% | 78% | 94 |
| 76% | 77% | 92 |
| 75% | 76% | 90 |
| 74% | 75% | 88 |
| 73% | 74% | 86 |
| 72% | 73% | 84 |
| 71% | 72% | 82 |
| 70% | 71% | 80 |
| 69% | 70% | 79 |
| 68% | 69% | 78 |
| 67% | 68% | 77 |
| 66% | 67% | 76 |
| 65% | 66% | 75 |
| 64% | 65% | 74 |
| 63% | 64% | 73 |
| 62% | 63% | 72 |
| 61% | 62% | 71 |
| 60% | 61% | 70 |
| 59% | 60% | 69 |
| 58% | 59% | 68 |
| 57% | 58% | 67 |
| 56% | 57% | 66 |
| 55% | 56% | 65 |
| 54% | 55% | 64 |
| 53% | 54% | 63 |
| 52% | 53% | 62 |
| 51% | 52% | 61 |
| 50% | 51% | 60 |
| 49% | 50% | 59 |
| 48% | 49% | 58 |
| 47% | 48% | 57 |
| 46% | 47% | 56 |

0000523

1/9/2004

| 45% | 46% | 55 |
|-----|-----|----|
| 44% | 45% | 54 |
| 43% | 44% | 53 |
| 42% | 43% | 52 |
| 41% | 42% | 51 |
| 40% | 41% | 50 |
| 0% | 40% | 0. |

Notwithstanding the preceding sentence, if the current payment performance level of a State for a fiscal year is less than 40 percent but exceeds by at least 5 percentage points the current payment performance level of the State for the immediately preceding fiscal year, then the applicable percentage with respect to the State's current payment performance level is 50 percent.

(D) COLLECTIONS ON CHILD SUPPORT ARREARAGES.--
(i) DETERMINATION OF ARREARAGE PAYMENT PERFORMANCE LEVEL.--The arrearage payment performance level for a State for a fiscal year is equal to the total number of cases under the State plan approved under this part in which payments of past-due child support were received during the fiscal year and part or all of the payments were distributed to the family to whom the past-due child support was owed (or, if all past-due child support owed to the family was, at the time of receipt, subject to an assignment to the State, part or all of the payments were retained by the State) divided by the total number of cases under the State plan in which there is past-due child support, expressed as a percentage.
(ii) DETERMINATION OF APPLICABLE PERCENTAGE.--The applicable percentage with respect to a State's arrearage payment performance level is as follows:

| If the support order performance level is: | | |
|--------------------------------------------|-----------------|------------------------------|
| At least: | But less than: | The applicable percentage is: |
| 80% | | 100 |
| 79% | 80% | 98 |
| 78% | 79% | 96 |
| 77% | 78% | 94 |
| 76% | 77% | 92 |
| 75% | 76% | 90 |
| 74% | 75% | 88 |
| 73% | 74% | 86 |
| 72% | 73% | 84 |

0000524

| 71% | 72% | 82 |
|-----|-----|-----|
| 70% | 71% | 80 |
| 69% | 70% | 79 |
| 68% | 69% | 78 |
| 67% | 68% | 77 |
| 66% | 67% | 76 |
| 65% | 66% | 75 |
| 64% | 65% | 74 |
| 63% | 64% | 73 |
| 62% | 63% | 72 |
| 61% | 62% | 71 |
| 60% | 61% | 70 |
| 59% | 60% | 69 |
| 58% | 59% | 68 |
| 57% | 58% | 67 |
| 56% | 57% | 66 |
| 55% | 56% | 65 |
| 54% | 55% | 64 |
| 53% | 54% | 63 |
| 52% | 53% | 62 |
| 51% | 52% | 61 |
| 50% | 51% | 60 |
| 49% | 50% | 59 |
| 48% | 49% | 58 |
| 47% | 48% | 57 |
| 46% | 47% | 56 |
| 45% | 46% | 55 |
| 44% | 45% | 54 |
| 43% | 44% | 53 |
| 42% | 43% | 52 |
| 41% | 42% | 51 |
| 40% | 41% | 50 |
| 0% | 40% | 0. |

Notwithstanding the preceding sentence, if the arrearage payment performance level of a State for a fiscal year is less than 40 percent but exceeds by at least 5 percentage points the arrearage payment performance level of the State for the immediately preceding fiscal year, then the applicable percentage with respect to

the State's arrearage payment performance level is 50 percent.

    (E) COST-EFFECTIVENESS.--
        (i) DETERMINATION OF COST-EFFECTIVENESS PERFORMANCE LEVEL.--The cost-effectiveness performance level for a State for a fiscal year is equal to the total amount collected during the fiscal year under the State plan approved under this part divided by the total amount expended during the fiscal year under the State plan, expressed as a ratio.
        (ii) DETERMINATION OF APPLICABLE PERCENTAGE.--The applicable percentage with respect to a State's cost-effectiveness performance level is as follows:

| If the cost-effectiveness performance level is: | | The applicable percentage is: |
|---|---|---|
| At least: | But less than: | |
| 5.00 | | 100 |
| 4.50 | 4.99 | 90 |
| 4.00 | 4.50 | 80 |
| 3.50 | 4.00 | 70 |
| 3.00 | 3.50 | 60 |
| 2.50 | 3.00 | 50 |
| 2.00 | 2.50 | 40 |
| 0.00 | 2.00 | 0 |

(c) TREATMENT OF INTERSTATE COLLECTIONS.--In computing incentive payments under this section, support which is collected by a State at the request of another State shall be treated as having been collected in full by both States, and any amounts expended by a State in carrying out a special project assisted under section 455(e) shall be excluded.

(d) ADMINISTRATIVE PROVISIONS.--The amounts of the incentive payments to be made to the States under this section for a fiscal year shall be estimated by the Secretary at/or before the beginning of the fiscal year on the basis of the best information available. The Secretary shall make the payments for the fiscal year, on a quarterly basis (with each quarterly payment being made no later than the beginning of the quarter involved), in the amounts so estimated, reduced or increased to the extent of any overpayments or underpayments which the Secretary determines were made under this section to the States involved for prior periods and with respect to which adjustment has not already been made under this subsection. Upon the making of any estimate by the Secretary under the preceding sentence, any appropriations available for payments under this section are deemed obligated.

(e) REGULATIONS.--The Secretary shall prescribe such regulations as may be necessary governing the calculation of incentive payments under this section, including directions for excluding from the calculations certain closed cases and cases over which the States do not have jurisdiction.

(f) REINVESTMENT.--A State to which a payment is made under this section shall expend the full amount of the payment to supplement, and not supplant, other funds used by the State--

> (1) to carry out the State plan approved under this part; or
> (2) for any activity (including cost-effective contracts with local agencies) approved by the Secretary, whether or not the expenditures for the activity are eligible for reimbursement under this part, which may contribute to improving the effectiveness or efficiency of the State program operated under this part.

[147] P.L. 105-200, §201(a), added §458A, effective October 1, 1999; §201(f)(1) repealed the former §458 and §201(f)(2)(A) redesignated the former §458A as §458.

See Vol. II, P.L. 105-200, §201(b), with respect to the transition rule for §458A, §201(c), with respect to required regulations and §201(d), with respect to certain studies and reports.

Top of Document

0000527