IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| State of ALABAMA DEPARTMENT OF HUMAN RESOURCES, CHILD SUPPORT ENFORCEMENT DIVISION, *et al.*,<br><br>   *Plaintiffs*,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF HEALTH HUMAN SERVICES, *et al*.<br><br>   *Defendants*. | Civ. No. 1:05CV2098 (RJL)<br><br>LOCAL RULE 56.1<br>STATEMENT OF MATERIAL<br>FACTS NOT IN DISPUTE |

**PLAINTIFFS' JOINT STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

   In accordance with Local Rule 56.1, Plaintiffs -- the agencies responsible for administering the Child Support Enforcement programs in Alabama, Delaware, the District of Columbia, Hawaii, Indiana, Kansas, Louisiana, New Mexico and Rhode Island (collectively, "the States" or "the Plaintiffs") -- jointly submit the following statement of material facts as to which there is no genuine dispute among the parties:

   1. Title IV-A of the Social Security Act (42 U.S.C. § 601 *et seq*.), entitled "Block Grants to States for Temporary Assistance for Needy Families" ("TANF"), provides grants to eligible States that have approved programs for providing assistance to needy families with children. To receive TANF funds, a State must operate a child support enforcement program consistent with Title IV-D of the Social Security Act. *See* JAR 5.[1]

---

[1] Throughout this statement, citations to the "JAR" refer to the administrative record from the joint HHS DAB appeal filed by the Plaintiff agencies in the States of Alabama, Delaware, Hawaii, Indiana, New Mexico, and Rhode Island. Cites to the "IAR" refer to the administrative record from the HHS DAB appeal filed by the Plaintiff agency in the State of Indiana.

2.  Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq.), entitled "Child Support and Paternity Establishment," is a federal-state cooperative program intended to increase the effectiveness of child support collection efforts by providing federal funding to States for such measures as establishing paternity, locating absentee parents, and obtaining child and spousal support. *See* JAR 5.

3.  Among other things, Titles IV-A and IV-D and implementing regulations at 45 C.F.R. pt. 305 create a system of incentives and penalties under which federal TANF funds are awarded to or withheld from States based on the performance of their Title IV-D Child Support Enforcement programs. The statutes and regulations establish five performance measures that are used to award incentives and three performance measures used to assess penalties. One of the penalty performance measures is called the Paternity Establishment Percentage ("PEP"). *See* JAR 5.

4.  The Administration for Children and Families ("ACF") Office of Child Support Enforcement ("OCSE") monitors state compliance with the performance measures, based on data that each State submits annually to ACF. *See* JAR 5. States report data to ACF using form OCSE-157, the Child Support Enforcement Annual Data Report. *See* JAR 27. States must submit data to ACF on form OCSE-157 by no later than December 31st after the end of the fiscal year. *See* JAR 26.

5.  The OCSE Office of Audit conducts data reliability audits ("DRAs") to determine whether a State has submitted complete and reliable data on its OCSE-157. *See* JAR 27. According to the regulations at 45 C.F.R. § 305.2, state data must meet a 95% standard of reliability effective beginning in fiscal year ("FY") 2001. *See* JAR 27.

6. A State is subject to a penalty if it fails to meet a performance measure or if it does not submit complete and reliable data in a fiscal year. *See* JAR 27. However, the penalty is suspended and will not be assessed if the State corrects the identified deficiencies in its performance with respect to the next fiscal year, which the regulations refer to as the "automatic corrective action year." *See 4*5 C.F.R. § 305.66 (b)-(c).

7. The penalty consists of a reduction in the amount of the State's annual TANF grant, ranging from 1% to 5%, depending on how many years the State has failed the performance measure. *See* JAR 4.

8. The OCSE Office of Audit generally provides a draft audit report to the state IV-D agency in the late Spring of the year following the fiscal year under review. *See, e.g.*, JAR 693 (Draft Audit Report No. AL-01-DRA); JAR 1083 (Draft Audit Report No. LA-02-DRA); JAR 1168 (Draft Audit Report No. NM-02-DRA). States then have 14 days to provide written comments in response to the draft audit reports. *See, e.g.*, JAR 693.

9. The OCSE Office of Audit generally provides a final audit report to the state IV-D agency in the Summer of the year following the fiscal year under review. *See, e.g.,* JAR 683 (Audit Report No. AL-01-DRA); JAR 1066 (Audit Report No. LA-02-DRA); JAR 1154 (Audit Report No. NM-02-DRA). The final audit reports contain a statement stating that "[t]he appropriate ACF official will make any final determinations as to the reliability of [the State's] reported performance indicator data." JAR 687, 1066, 1155.

10. The OCSE Office of Audit provided the District of Columbia a final audit report for the federal fiscal year 2001 on June 13, 2002, which contains a statement confirming that "[t]he appropriate ACF official will make any final determination as to the reliability of the District's reported performance indicator data." JAR 852.

11. ACF did not notify State TANF directors that their grants were at risk of a penalty before November 14, 2003. In letters dated November 14, 2003, ACF announced final penalties against each State in the amount of one percent of the State's TANF block grant for FY 2001, on the ground that the State had either failed to submit reliable data or failed to satisfy the minimum performance level on the same performance measure for two consecutive years. *See* JAR 662, 711, 911, 1001, 1054, 1146, 1219; IAR 106.

12. ACF notified the District of Columbia by letter dated November 14, 2003, addressed to the Corporation Counsel, that the District was being assessed a penalty in the amount of one percent of the District's TANF block grant for federal fiscal year 2001, on the grounds that the District failed for two consecutive years to submit reliable data concerning Arrearage Collections and failed for two consecutive years to attain the specified minimum level of performance in Support Order Establishments. *See* JAR 783.

13. Plaintiff Alabama was assessed a penalty in the amount of $532,692. *See* JAR 41. Plaintiff Delaware was assessed a penalty in the amount of $293,489. *See* JAR 45. Plaintiff District of Columbia was assessed a penalty in the amount of $701, 495. *See* JAR 47. Plaintiff Hawaii was assessed a penalty in the amount of $921,048. *See* JAR 56. Plaintiff Indiana was assessed a penalty in the amount of $1,447,594. *See* IAR 1. Plaintiff Kansas was assessed a penalty in the amount of $807,487. *See* JAR 56. Plaintiff Louisiana was assessed a penalty in the amount of $1,096,723. *See* JAR 61. Plaintiff New Mexico was assessed a penalty in the amount of $946,877. *See* JAR 75. Plaintiff Rhode Island was assessed a penalty in the amount of $945,007. *See* JAR 77.

14. A State facing a penalty reduction in its TANF grant is required to make up the shortfall with additional state funds in the following fiscal year. *See* 45 C.F.R. § 262.1(e). Therefore, the total fiscal impact on a State is twice the amount of the penalty.

15. States may choose one of two methods for reporting their PEPs, one based on children in the State's IV-D caseload ("IV-D PEP measure") and the other based on all children in the State ("Statewide PEP measure"). *See* JAR 3.

16. In 2002, eleven States were determined not to have submitted reliable PEP data. Ten of the eleven States used the IV-D PEP measure. Ten of the 26 States (or more than a third) using the IV-D PEP measure were determined not to have submitted reliable data. Only one of the 28 States using the Statewide PEP measure was determined not to have submitted reliable data. *See* JAR 651 (OCSE Performance Indicator Scores and Incentives Earned, FFY 2002, dated Nov. 17, 2003)**.**

17. OCSE auditors use two different methods to determine if a State's data is "reliable," depending on whether the State uses a IV-D PEP measure or a Statewide PEP measure. To determine the reliability of data submitted by a State that has chosen the IV-D PEP measure, "ACF examines sample cases to determine whether (1) the state reported data (i.e., children) that should not have been included (for instance, if they were not born out of wedlock, or if their paternity was not established), so-called 'inclusion errors,' and (2) whether the state failed to include children who should have been included, so-called 'exclusion errors.'" JAR 33. To determine the reliability of PEP data submitted by a State using the Statewide PEP measure, "ACF does not use a sampling technique that would enable it to determine if the state failed to include a child who should have been included (for instance, a child born out of wedlock).

5

Instead, ACF's sampling method enables it to determine only if the state included data (i.e., children) that should not have been included." JAR 34.

18. The different standard for reliability for auditing PEP and Statewide data was not published in the Federal Register or otherwise publicly announced to the States. It was noted in a footnote within "an ACF issuance, 'Guide to Auditing Data Reliability,' March 2002, that ACF sent to all state IV-D directors as an attachment to 'Dear Colleague' letter DC-02-07, dated April 1, 2002." JAR 34. The different standard of reliability was not disclosed in a draft audit guide issued by ACF on February 14, 2000. *See* JAR 35

19. Although data reliability audits were conducted in FY 2000, the first year for which States were subject to performance penalties was FY 2001. *See* 45 C.F.R. § 305.42 ("Penalty phase-in").

20. In FY 2001, Plaintiff agencies in the States of Alabama, Delaware, Hawaii, Indiana, Louisiana, and Rhode Island chose the IV-D PEP method for reporting PEP performance. With the exception of Alabama, each of those States failed its DRA for FY 2001. *See* JAR 35 n. 16; IAR 2.

21. In FY 2002, Plaintiff agencies in the States of Alabama, Delaware, Hawaii, Indiana, Louisiana, New Mexico, and Rhode Island chose the IV-D PEP method for reporting PEP performance. Each of those States failed its DRA for FY 2002. *See* JAR 35 n. 16; IAR 2.

22. A State may be determined to have submitted adequate data if the Secretary determines that the incompleteness or unreliability of the data is of a technical nature that does not adversely affect the performance of the State's IV-D program or the determination of the level of the State's performance measures. *See* JAR 3. ACF invoked this provision to

accept the adequacy of otherwise unreliable data submitted by 23 states for FY 2000.  *See* JAR 32; *see also* JAR 1712 ("We believe that a determination was warranted that the incompleteness or unreliability of these 23 states' data for FFY 2000 was of a technical nature that did not adversely affect the determination on the performance measures.  Therefore, in accordance with the authority granted the Secretary, no state will be subject to a penalty for incomplete or unreliable FY 2000 data. ").

23. In January 2004, the Plaintiff agencies in the States of Alabama, Delaware, the District of Columbia, Hawaii, Kansas, Louisiana, New Mexico, and Rhode Island jointly appealed the penalties to the U.S. Department of Health and Human Services Departmental Appeals Board ("DAB").  *See* JAR 1-82.[2]  The Plaintiff agency in the State of Indiana filed a separate appeal before the DAB.   *See* IAR 1-26.

24. In a decision dated July 28, 2005, the DAB upheld the penalties against the Plaintiff agencies in the States of Alabama, Delaware, the District of Columbia, Hawaii, Kansas, Louisiana, New Mexico, and Rhode Island.   *See* JAR 1-82.  In a decision dated October 26, 2005, the DAB upheld the penalty against the Plaintiff agency in the State of Indiana.  *See* IAR 1-26.

          Respectfully submitted,

          _____/s/_____
          Caroline M. Brown (D.C. Bar No. 438432)
          Joseph Zambuto, Jr. (D.C. Bar No. 484542)
          Kelly C. Blevins (D.C. Bar No. 488287)
          COVINGTON & BURLING

---

[2] The District of Columbia participated in the joint appeal to the DAB but is separately represented in this action.

        1201 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004-2401
        (202) 662-6000
        *Attorneys for Plaintiff Agencies of the States of Alabama, Delaware, Hawaii, Indiana, Kansas, Louisiana, New Mexico, and Rhode Island*

        _____/s/_____
        MAUREEN W. ZANIEL
        Senior Assistant Attorney General
        Bar Number 358996
        Civil Enforcement Section
        Suite 450 North
        441 4th Street, NW
        Washington, DC 20001
        (202) 727-3886
        (202) 727-6546 (fax)
        Email: Maureen.Zaniel@dc.gov
        *Attorney for Plaintiff District of Columbia Office of the Corporation Counsel*

DATED: April 19, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of April, 2006, I caused the foregoing Plaintiffs' Joint Statement of Material Facts Not in Dispute to be served on the following counsel of record electronically by means of email and the district court's ECF system.

Adam D. Kirschner
MAILING ADDRESS
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
DELIVERY ADDRESS
20 Massachusetts Ave, N.W.
Room 7222
Washington, DC 20001

Maureen W. Zaniel
Senior Assistant Attorney General
District of Columbia Civil Enforcement Section
Suite 450 North
441 4th Street, NW
Washington, D.C. 20001

      /s/_____
Joseph Zambuto, Jr.
*Attorney for Plaintiff Agencies of the States of Alabama, Delaware, Hawaii, Indiana, Kansas, Louisiana, New Mexico, and Rhode Island*