**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES, et al | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | 1:05CV2098 (RJL) |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
JOINT STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1, defendants United States Department of Health and Human Services and Michael O. Leavitt, Secretary of the Department of Health and Human Services, respond, by and through their undersigned counsel, to plaintiffs' joint statement of material facts not in dispute as follows. Plaintiffs' numbered statements are reproduced below, each followed by the defendants' response.

1.      Title IV-A of the Social Security Act (42 U.S.C. § 601 *et seq*.), entitled "Block Grants to States for Temporary Assistance for Needy Families" ("TANF"), provides grants to eligible States that have approved programs for providing assistance to needy families with children.  To receive TANF funds, a State must operate a child support enforcement program consistent with IV-D of the Social Security Act.  *See* JAR 5.[1]

_____

[1]In a footnote to "Plaintiffs' Joint Statement of Material Facts Not in Dispute," plaintiffs explain that "citations to the 'JAR' refer to the administrative record from the joint HHS DAB

**Response:**    This paragraph constitutes plaintiffs' characterization of statutory provisions and does not contain statements of facts. Therefore, no response is required.

2.    Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq.), entitled "Child Support and Paternity Establishment," is a federal-state cooperative program intended to increase the effectiveness of child support collection efforts by providing federal funding to States for such measures as establishing paternity, locating absentee parents, and obtaining child and spousal support. See JAR 5.

**Response:**    This paragraph contains only conclusions of law and plaintiffs' characterization of statutory and regulation provisions, and does not contain statements of facts. Therefore, no response is required.

3.    Among other things, Titles IV-A and IV-D and implementing regulations at 45 C.F.R. pt. 305 create a system of incentives and penalties under which federal TANF funds are awarded to or withheld from States based on the performance of their Title IV-D Child Support Enforcement programs. The statutes and regulations establish five performance measures that are used to award incentives and three performance measures used to assess penalties. One of the penalty performance measures is called the Paternity Establishment Percentage ("PEP"). See

---

appeal filed by the Plaintiff agencies in the States of Alabama, Delaware, Hawaii, Indiana, New Mexico, and Rhode Island." However, that list is both under-inclusive and over-inclusive. The "JAR" should refer to the joint appeals of agencies in the States of Alabama, Delaware, the District of Columbia, Hawaii, Kansas, Louisiana, New Mexico and Rhode Island. Furthermore, as plaintiffs explain in that same footnote, cites "to the 'IAR' refer to the administrative record from the HHS appeal filed by the Plaintiff agency in the State of Indiana."

JAR 5.

      **Response:**    This paragraph contains only conclusions of law and plaintiffs'

characterization of statutory and regulation provisions, and does not contain statements of facts.

Therefore, no response is required.  Nevertheless, defendants dispute plaintiffs' characterization

of the statutory and regulation provisions.  Titles IV-A (TANF) and IV-D ("Child Support" ) of

the Social Security Act set forth two separate, but related, programs with different funding

mechanisms.  Under its IV-D program, a State provides child support services to persons

receiving assistance under TANF, the foster care and Medicaid programs, and other persons who

request services.  Federal funds under the TANF program are reduced if a State fails to meet

certain requirements under its child support enforcement program for two consecutive years,

including the failure to meet required performance levels for any of three measures or the failure

to have complete and reliable data for any of five measures.  Performance based incentives are

awarded to states under the child support program based on statutory provisions in Title IV-D

(42 U.S.C. 658a) and the regulations in 45 C.F.R. Part 305.


      4.     The Administration for Children and Families ("ACF") Office of Child Support

Enforcement ("OCSE") monitors state compliance with the performance measures, based on data

that each State submits annually to ACF.  See JAR 5.  States report data to ACF using form

OCSE-157, the Child Support Enforcement Annual Data Report.  See JAR 27.  States must

submit data to ACF on form OCSE-157 by no later than December 31st after the end of the fiscal

year.  See JAR 26.

      **Response:**    The first sentence is undisputed.  The second and third sentences are

incomplete; states also report child support collection data on OCSE-34A and expenditure data on OCSE-396A. For incentive and penalty calculation purposes, all data must be submitted by December 31st.

5.      The OCSE Office of Audit conducts data reliability audits ("DRAs") to determine whether a State has submitted complete and reliable data on its OCSE-157. See JAR 27. According to the regulations at 45 C.F.R. § 305.2, state data must meet a 95% standard of reliability effective beginning in fiscal year ("FY") 2001. See JAR 27.

**Response:**      The first sentence is incomplete and inaccurate. The OCSE Office of Audit conducts audits to review data submitted on its OCSE-157, OCSE-34A, and OCSE 396A forms. The second sentence constitutes a characterization of a regulation (although the wrong regulation is cited). <u>See</u> 45 C.F.R. § 305.1. Therefore, the second sentence does not contain a statements of fact and no response is required.

6.      A State is subject to a penalty if it fails to meet a performance measure or if it does not submit complete and reliable data in a fiscal year. See JAR 27. However, the penalty is suspended and will not be assessed if the State corrects the identified deficiencies in its performance with respect to the next fiscal year, which the regulations refer to as the "automatic corrective action year." See 45 C.F.R. § 305.66 (b)-(c).

**Response:**      This paragraph constitutes a legal conclusion as well as an incorrect characterization of a statutory provision and regulation. <u>See</u> 42 U.S.C. § 609(a)(8); 45 C.F.R. § 305.66 . Therefore, this paragraph does not contain a statement of fact and no response is

required.  Furthermore, the page of the record that is cited does not discuss when a state is

subject to a penalty and, therefore, there is no support in the cited page for the proposition stated

in this paragraph.  To the extent a response is required, this paragraph is disputed.  A state is not

subject to a penalty for failing to meet a performance measure or failing to submit complete and

reliable data <u>for one fiscal year</u>.  A state is "penalized if [and only if], <u>for two consecutive years</u>,

with respect to the same performance measure, it fails to demonstrate with reliable data that it

met the required level of performance."  JAR at 3 (emphasis added); <u>see</u> <u>also</u> 42 U.S.C.

609(a)(8)(A) (specifically outlining that a state is penalized for failing to meet its performance

measures, or submit complete and reliable data, for both "a fiscal year" and "succeeding fiscal

year").  In addition, neither the regulation cited, 45 C.F.R. § 305.66, nor any other currently

applicable regulation or statutory provision related to a state's child support enforcement

performance measures refers to the penalty being suspended.  An old regulation that has been

replaced, 45 C.F.R. § 305.99, required notice that a penalty would be "suspended if the State

[met] the conditions" of the corrective action plan.  <u>See</u> 45 C.F.R. § 305.99 (1998).  However,

Section 305.66 does not provide for such notice (or any suspension of a penalty) because 42

U.S.C. § 609(c) specifically excludes child enforcement programs from corrective action plans.


        7.      The penalty consists of a reduction in the amount of the State's annual TANF

grant, ranging from 1% to 5%, depending on how many years the State has failed the

performance measure.  See JAR 4.

        **Response:**      This paragraph contains solely a characterization of a statutory provision

and does not contain a statement of material fact.  Therefore, no response is required for this

paragraph.

8.      The OCSE Office of Audit generally provides a draft audit report to the state IV-D agency in the late Spring of the year following the fiscal year under review.  See, e.g., JAR 693 (Draft Audit Report No. AL-01-DRA); JAR 1083 (Draft Audit Report No. LA-02-DRA); JAR 1168 (Draft Audit Report No. NM-02-DRA).  States then have 14 days to provide written comments in response to the draft audit reports.  See, e.g., JAR 693.

**Response:**      It is undisputed that between April and July of 2002 the OCSE Office of Audit sent draft audit reports for FY 2001 to each state's umbrella agency in which the IV-D agency is located and provided the IV-D agency a copy of such reports.  However, it is immaterial if the OCSE Office of Audit generally provides the draft audit reports in the late Spring of the year following the fiscal year under review.  Furthermore, defendants dispute any implication that a state's IV-A agency was not on notice that it may be assessed a penalty for the failure of its IV-D agency to comply with child enforcement performance requirements.  See 42 U.S.C. § 609(a)(8); see also generally 42 U.S. 601 et. seq.  Defendants do not dispute that states have 14 days to provide written comments in response to the draft audit reports.

9.      The OCSE Office of Audit generally provides a final audit report to the state IV-D agency in the Summer of the year following the fiscal year under review.  See, e.g., JAR 683 (Audit Report No. AL-01-DRA); JAR 1066 (Audit Report No. LA-02-DRA); JAR 1154 (Audit Report No. NM-02-DRA).  The final audit reports contain a statement stating that "[t]he appropriate ACF official will make any final determinations as to the reliability of [the State's]

-6-

reported performance indicator data." JAR 687, 1066, 1155.

**Response:**     It is undisputed that between May, which is during the Spring and not the Summer, and August 1, 2002, the OCSE Office of Audit sent final audit reports for FY 2001 to each state's umbrella agency in which the IV-D agency is located and provided the IV-D agency a copy of such reports.  However, it is immaterial if the OCSE Office of Audit generally provides the audit reports in the Summer of the year following the fiscal year under review. Furthermore, defendants dispute any implication that a state's IV-A agency was not on notice that it may be assessed a penalty for the failure of its IV-D agency to comply with the performance requirements.  See 42 U.S.C. § 609(a)(8); see also generally 42 U.S. 601 et. seq.  It is undisputed, but also not material, that those audit reports contained the statement: "[t]he appropriate ACF official will make any final determinations as to the reliability of [the State's] reported performance indicator data."

10.     The OCSE Office of Audit provided the District of Columbia a final audit report for the federal fiscal year 2001 on June 13, 2002, which contains a statement confirming that "[t]he appropriate ACF official will make any final determination as to the reliability of the District's reported performance indicator data."  JAR 852.

**Response:** Undisputed, but immaterial.

11.     ACF did not notify State TANF directors that their grants were at risk of a penalty before November 14, 2003.  In letters dated November 14, 2003, ACF announced final penalties against each State in the amount of one percent of the State's TANF block grant for FY 2001, on

the ground that the State had either failed to submit reliable data or failed to satisfy the minimum performance level on the same performance measure for two consecutive years. See JAR 662, 711, 911, 1001, 1054, 1146, 1219; IAR 106.

**Response:**     Defendants dispute the first sentence. ACF put the State TANF directors on actual or constructive notice that their grants were at risk of a penalty when they sent out the draft and final audit reports. See JAR at 18 ("[t]he record also shows that ACF informed each of the States of problems with the reliability of their FY 2001 data in time for them to take corrective action before the deadline for submitting their data for FY 2002, the corrective action year."). For many of the plaintiffs, the draft and final audit reports were sent to the head of the umbrella agency that houses the TANF program, which is the same person to whom the penalty letter was sent. The TANF directors from the other states were on constructive notice from the statute and regulations. See 42 U.S.C. § 609(a)(8) (establishing penalties to a state's TANF grant for failure to comply with the child support enforcement program); see also 45 C.F.R. Part 305. Defendants do not dispute the second sentence except to the extent that it implies that any penalty assessed against a state's TANF grant based on Title IV-D performance and/or data reliability would be independent of any other penalties assessed against that grant. See, e.g., JAR at 663 (the November 14, 2003 letters informed the states that any penalty assessed had to "be imposed in accordance with the provisions of 45 CFR 262.1(b) though (e), which govern the assessment of multiple penalties in a fiscal year, the maximum penalty of 25 percent of a state's TANF grant for any quarter, and the timing of TANF grant reductions where the 25 percent limit prevents full recovery during a quarter.").

12.     ACF notified the District of Columbia by letter dated November 14, 2003,
addressed to the Corporation Counsel, that the District was being assessed a penalty in the
amount of one percent of the District's TANF block grant for federal fiscal year 2001, on the
grounds that the District failed for two consecutive years to submit reliable data concerning
Arrearage Collections and failed for two consecutive years to attain the specified minimum level
of performance in Support Order Establishments.  See JAR 783.

**Response:**     Defendants dispute the implication in this paragraph that the District had
not failed to submit reliable data for FY 2001 for its Support Order Establishments measure.  See
JAR at 783 ("the data needed to determine Support Order Establishments [for fiscal year 2001] .
. . were determined not to be reliable").  Defendants also dispute any implication in this
paragraph that any penalty assessed against the District's TANF grant was independent of any
other penalties assessed against that grant.   See JAR at 783 (the November 14, 2003 letter
informed the District that any penalty assessed had to "be imposed in accordance with the
provisions of 45 CFR 262.1(b) though (e), which govern the assessment of multiple penalties in
a fiscal year, the maximum penalty of 25 percent of a state's TANF grant for any quarter, and the
timing of TANG grant reductions where the 25 percent limit prevents full recovery during a
quarter.").  The facts in this paragraph are otherwise undisputed.


13.     Plaintiff Alabama was assessed a penalty in the amount of $532,692.  See JAR
41.  Plaintiff Delaware was assessed a penalty in the amount of $293,489.  See JAR 45.  Plaintiff
District of Columbia was assessed a penalty in the amount of $701, 495.  See JAR 47. Plaintiff
Hawaii was assessed a penalty in the amount of $921,048.  See JAR 56.  Plaintiff Indiana was

assessed a penalty in the amount of $1,447,594.  See IAR 1.  Plaintiff Kansas was assessed a penalty in the amount of $807,487.  See JAR 56.  Plaintiff Louisiana was assessed a penalty in the amount of $1,096,723.  See JAR 61.  Plaintiff New Mexico was assessed a penalty in the amount of $946,877.  See JAR 75.  Plaintiff Rhode Island was assessed a penalty in the amount of $945,007.  See JAR 77.

**Response:**     Undisputed.

14.     A State facing a penalty reduction in its TANF grant is required to make up the shortfall with additional state funds in the following fiscal year.  See 45 C.F.R. § 262.1(e).  Therefore, the total fiscal impact on a State is twice the amount of the penalty.

**Response:**     The first sentence is undisputed.  The second sentence is disputed.  It is undisputed that a state must make up the shortfall in its TANF grant with state funds.  See 45 C.F.R. § 262.1(e).  However, no state is required to pay any money to the federal government when its TANF grant is reduced.  Rather, each state just has its TANF grant reduced by a certain percentage.  See 42 U.S.C. § 609(a)(8)(B).  The money each state uses to make up the shortfall in the TANF grant is in place of the money that the state receives from the federal government, not in addition to that penalty that is assessed by the federal government against that state's TANF grant.  The state is not required to return any money to the federal government based on the penalty assessment.  Therefore, the total fiscal impact is just the amount that the states are having their grants reduced.

15.     States may choose one of two methods for reporting their PEPs, one based on

children in the State's IV-D caseload ("IV-D PEP measure") and the other based on all children

in the State ("Statewide PEP measure").  See JAR 3.

      **Response:**     Undisputed.


     16.     In 2002, eleven States were determined not to have submitted reliable PEP data.

Ten of the eleven States used the IV-D PEP measure.  Ten of the 26 States (or more than a third)

using the IV-D PEP measure were determined not to have submitted reliable data.  Only one of

the 28 States using the Statewide PEP measure was determined not to have submitted reliable

data.  See JAR 651 (OCSE Performance Indicator Scores and Incentives Earned, FFY 2002,

dated Nov. 17, 2003).

      **Response:**     The factual assertions in this paragraph are immaterial, although they are

undisputed.  Furthermore, in 2001, more states (11) using the statewide PEP measure failed

because of data reliability problems then those states (9) that failed using the IV-D measure.

JAR at 1739.


     17.     OCSE auditors use two different methods to determine if a State's data is

"reliable," depending on whether the State uses a IV-D PEP measure or a Statewide PEP

measure.  To determine the reliability of data submitted by a State that has chosen the IV-D PEP

measure, "ACF examines sample cases to determine whether (1) the state reported data (i.e.,

children) that should not have been included (for instance, if they were not born out of wedlock,

or if their paternity was not established), so-called 'inclusion errors,' and (2) whether the state

failed to include children who should have been included, so-called 'exclusion errors.'" JAR 33.

To determine the reliability of PEP data submitted by a State using the Statewide PEP measure, "ACF does not use a sampling technique that would enable it to determine if the state failed to include a child who should have been included (for instance, a child born out of wedlock). Instead, ACF's sampling method enables it to determine only if the state included data (i.e., children) that should not have been included." JAR 34.

> **Response:**    Undisputed.

18.    The different standard for reliability for auditing PEP and Statewide data was not published in the Federal Register or otherwise publicly announced to the States. It was noted in a footnote within "an ACF issuance, 'Guide to Auditing Data Reliability,' March 2002, that ACF sent to all state IV-D directors as an attachment to 'Dear Colleague' letter DC-02-07, dated April 1, 2002." JAR 34. The different standard of reliability was not disclosed in a draft audit guide issued by ACF on February 14, 2000. See JAR 35

> **Response:**    Defendants dispute that ACF applied different standards of reliability for PEP and statewide data. For both measures, ACF applied the regulation's definition of reliable data; it is "the most recent data available which are found by the Secretary to be reliable and is a state that exists when data are sufficiently complete and error free to be for their purpose and context." See 45 C.F.R. § 305.1(I) (further maintaining that the "data must meet a 95 standard of reliability"). ACF does not dispute that it used a different sampling methodology for auditing the different IV-D PEP and statewide PEP data universes. See JAR at 34-35 (explaining the difference in ACF's sampling methodology for PEP and statewide data). Defendants do not dispute that ACF noted the "difference in the methods" in a footnote in "an ACF issuance,

-12-

'Guide to Auditing Data Reliability,' March 2002, that ACF sent to all state IV-D directors as an attachment to 'Dear Colleague' letter DC-02-07, dated April 1, 2002." See JAR at 34. Defendants also do not dispute that the 2000 draft audit guide did not "provide[] notice of the different <u>methods</u> that would be used to assess the reliability of Statewide and IV-D PEP data." See JAR at 35 (emphasis added). However, none of the undisputed facts contained in this paragraph are material.

19.    Although data reliability audits were conducted in FY 2000, the first year for which States were subject to performance penalties was FY 2001. See 45 C.F.R. § 305.42 ("Penalty phase-in").

**Response:**    Undisputed, but immaterial.

20.    In FY 2001, Plaintiff agencies in the States of Alabama, Delaware, Hawaii, Indiana, Louisiana, and Rhode Island chose the IV-D PEP method for reporting PEP performance. With the exception of Alabama, each of those States failed its DRA for FY 2001. See JAR 35 n. 16; IAR 2.

**Response:**    Undisputed.

21.    In FY 2002, Plaintiff agencies in the States of Alabama, Delaware, Hawaii, Indiana, Louisiana, New Mexico, and Rhode Island chose the IV-D PEP method for reporting PEP performance. Each of those States failed its DRA for FY 2002. See JAR 35 n. 16; IAR 2.

**Response:**    Undisputed.

-13-

22.     A State may be determined to have submitted adequate data if the Secretary determines that the incompleteness or unreliability of the data is of a technical nature that does not adversely affect the performance of the State's IV-D program or the determination of the level of the State's performance measures.  See JAR 3.  ACF invoked this provision to accept the adequacy of otherwise unreliable data submitted by 23 states for FY 2000.  See JAR 32; see also JAR 1712 ("We believe that a determination was warranted that the incompleteness or unreliability of these 23 states' data for FFY 2000 was of a technical nature that did not adversely affect the determination on the performance measures.  Therefore, in accordance with the authority granted the Secretary, no state will be subject to a penalty for incomplete or unreliable FY 2000 data. ").

**Response:**     The factual assertions in this paragraph are disputed and immaterial. Defendants dispute that a state may be determined to have submitted adequate data if the Secretary determines that the incompleteness or unreliability of the data is of a technical nature that does not adversely affect the performance of the State's IV-D program.  When a state's data is determined to be incomplete or unreliable, the data may be determined to be adequate only if the incompleteness or unreliability is of a technical nature which does not affect the determination of the level of the state's performance measures.  See 42 U.S.C. 609(a)(8)(C)(ii). In addition, the parenthetical is mis-cited as JAR 1712 as opposed to the correct cite of JAR 1713.

23.     In January 2004, the Plaintiff agencies in the States of Alabama, Delaware, the

-14-

District of Columbia, Hawaii, Kansas, Louisiana, New Mexico, and Rhode Island jointly appealed the penalties to the U.S. Department of Health and Human Services Departmental Appeals Board ("DAB").  See JAR 1-82.[2]  The Plaintiff agency in the State of Indiana filed a separate appeal before the DAB.   See IAR 1-26.

      **Response:**     Undisputed, except that the District of Columbia is not a state.


      24.     In a decision dated July 28, 2005, the DAB upheld the penalties against the Plaintiff agencies in the States of Alabama, Delaware, the District of Columbia, Hawaii, Kansas, Louisiana, New Mexico, and Rhode Island.   See JAR 1-82.  In a decision dated October 26, 2005, the DAB upheld the penalty against the Plaintiff agency in the State of Indiana.  See IAR 1-26.

      **Response:**     Undisputed, except that the District of Columbia is not a state..


Dated: May 24, 2006

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney for the District of Columbia

SHEILA M. LIEBER
Deputy Director, Federal Programs Branch

_/s/_____

Of Counsel
LINDA GRABEL
Assistant Chief Counsel
Children, Families, and Aging Division
Office of the General Counsel
U.S. Department of
Health and Human Services

ADAM D. KIRSCHNER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044

Delivery Address
20 Massachusetts Ave., NW., Room 7222
Washington, DC 20001
Telephone: (202) 353-9265
Fax: (202) 616-8470
Adam.Kirschner@usdoj.gov

COUNSEL FOR DEFENDANT